FILED

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2

2017 FEB -7  A 11: 03

3

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

4   Capt. James Linlor, pro se          )
                                         )   Case No.  1:17cv13 (JCC/JFA)
5       Plaintiff                        )
                                         )
6   v.                                   )   FIRST AMENDED COMPLAINT (2/7/17)
                                         )
7                                        )
                                         )
8   MICHAEL POLSON,                      )
    in his personal capacity             )
9                                        )
                                         )
10      Defendant                        )

11  Addresses:

12  MICHAEL POLSON
    2707 Fordham Road, Alexandria, VA 22302

13  **DEFENDANT HAS REFUSED TO PROVIDE A CONTACT PHONE NUMBER IN
    VIOLATION OF CivLR 7(B).  If not provided within 10 days of filing of this Complaint,
14  Plaintiff requests this Court to assign sanctions at its discretion, or Plaintiff will move to
    request sanctions.**

15

16  Capt. James Linlor
    PO Box 1812, Zephyr Cove, NV  89448
17  (775) 298-1505

18              FIRST AMENDED COMPLAINT

19
    Pursuant to Court's Order of 31 January 31, 2017 and consequently FRCP 15(a)(1)(B), Plaintiff
20
    hereby refiles and concurrently amends his initial complaint to redact the combination of data
21
    elements which would create SSI information not authorized for publication and for which
22
    publication is known to potentially inflict great bodily harm or death, on the Plaintiff, Plaintiff's
23
    family, and others, as known to the Court and Defendant in this matter.  Elements of previous,
24
    non-public filings by Plaintiff are therefore included herein by reference without recitation for
25
26  purposes of FRCP 12 et. seq., and Plaintiff maintains claiming privilege to all referenced matters
27
    in combination with the Plaintiff's name and address as Sensitive Security Information (SSI),
28

1  and actionable under Federal Regulations and Nevada Revised Statutes in the jurisdiction of

2  Nevada against parties in this case due to parties' current non-performance of duties under color

3  of state law, and restricted from public disclosure as harmful against adults and minors if

4  published or disclosed.  Contrary to the respected opinion in the Court's Order of 31 January

5  2017, it is not necessarily generic information per se which is SSI, but information in

6

7  combination with the Plaintiff's personally identifying information (PII), the combination and

8  assignment of which results in SSI, as is common in statute and practice.  As such, privilege is

9  claimed by the Plaintiff for SSI, with no allowance for publication, dissemination, or inclusion

10  (except by reference without recitation) in this case's filings or testimony except as the Plaintiff

11  may choose to agree with pursuant to direction from jurisdictional Courts.

12

13

14                                         <u>COMPLAINT</u>

15  **The claim alleged is for a violation of the Plaintiff's fundamental rights under the 4th**

16  **Amendment against unreasonable searches, in this case the felonious sexual striking of the**

17  **Plaintiff by the Defendant, and seeking monetary damages available as proscribed under**

18  **Bivens in such cases.**

19

20

21  **This Complaint is a Bivens action for violations of the Fourth Amendment by TSA agent**

22  **Michael Polson, who was arrested for aggravated (felony) sexual battery for striking an off-**

23  **duty pilot in the groin during a non-standard security pat down at Dulles Airport near**

24  **Washington, DC on March 10, 2016, and supported by numerous video and audio**

25  **recordings, written reports, and undisputed filings by Plaintiff (incorporated by reference)**

26  **in this same venue.  This Complaint seeks specific damages, all monetary (as proscribed by**

27  **Bivens) in relief.**

28

1

2  The claim stems from the deliberate indifference and recklessness of the Defendant Michael

3  Polson, now properly identified as a sexual predator with sadistic, deviant habits and manners of

4

5  self-pleasure, evinced and supported by his proclivity for pleasuring himself through criminal,

6  frequent contact with other men's groins and genetalia as defined in VA 18.2-67.3 and § 18.2-

7  67.10, from actions under color of law, in his personal (individual) capacity. Each of the

8  preceding adjectives is required, and demonstrable through the sexual predator Michael Polson's

9  actions of striking an innocent pilot transiting through the Defendant's TSA pre-check work area,

10  with premeditation (as shown by having him spread his legs wider for a "clean shot"), the mere

11  act of Michael Polson pleasuring himself by instigating contact and aggravated sexual abuse (as

12

13  defined in VA 18.2-67.3 and § 18.2-67.10) with another man's groin and genitals, all in a

14  sadistic and deviant manner. Pleasure was further evinced through the Defendant's laughter,

15  smiling, and good humor after forcefully striking the Plaintiff (pilot) in the groin, and refusal to

16  mitigate his actions through any apologies as would be normal and expected behavior. Sexual

17  sadistic deviance as a sexual predator, and homosexual sexual contact which the Defendant

18  clearly enjoys are the Defendant's own business on his own time, but are clearly outside of

19  policy and normal procedures, inappropriate for his TSA screener job at an airport, and fervently

20

21  against the Plaintiff's wishes, with no consent, and no desire ever for sexual contact by a male.

22  Polson's actions are sufficiently outside of normal activities that Polson's mental state is also

23  implicated, as will be demonstrated as relevant and worthy of assessment during planned

24  Discovery. The aggravated sexual battery of the victim by the sexual predator Michael Polson

25  was known by the Defendant to be recorded on airport security video cameras, plus in police

26  recordings, reports, and conversations, and occurred in violation of local jurisdiction statutes VA

27

28

1   18.2-67.3 and § 18.2-67.10 (see Exhibit F).  Defendant clearly felt so cocksure of his qualified

2   immunity and likely cover-up by fellow TSA and airport police (MWAA) employees as to

3   nevertheless commit an aggravated sexual battery despite multiple video recordings and potential

4   witnesses in a high-traffic TSA checkpoint area, in retribution for Plaintiff's refusal of

5   Defendant's unlawful order to surrender [documents previously filed with the Court and

6   Defendant, redacted here as SSI in combination with the Plaintiff's full name, but incorporated

7   by reference].  For Bivens, the Fourth Amendment right to be free from unreasonable searches,

8   which in this case are applied to include an aggravated sexual abuse and battery resulting in the

9   common law citizen's arrest of Michael Polson (Defendant) immediately thereafter by the

10  victim, in the presence of Metropolitan Washington Airport Authority (MWAA) police and TSA

11  officials.  According to the local code (Exhibit F), this is specifically NOT a lesser charge than

12  an aggravated sexual battery, regardless of non-witness, revisionist speculation of a potential

13  lesser charge by colleagues of the Defendant attempting to cast aspersions while covering up

14  their own, conspiratorial and unethical actions, as will be demonstrated by evidence in this case.

15  Though not pled as a cause of action in this case, Plaintiff also invokes rights as per Attorney

16  General guidance under 18 US Code § 3771 ("the Crime Victim Rights Act, or CVRA") sections

17  A(3), A(4), A(7), and A(8), to be permitted to attend a mandatory probable cause hearing still

18  pending since 10 March 2016, to compel production of evidence by third parties previously

19  requested for preservation, and either withheld or illegally destroyed.   Plaintiff expresses his

20  shock and surprise at the Court's finding in its Order of 24 January 2017 that 18 US Code §

21  3771(A)(8) for privacy for victims of felony sexual battery (in the same category per VA § 18.2-

22  67.10 as when Michael Polson commits rape, sodomy, or penetration with a foreign object on

23  other adult or child victims) does not rise to relevance or applicability for privacy and proceeding

1   via names redacted to initials (without publication of other PII, such as address and phone

2   numbers) in this instant case.  However, Plaintiff appreciates the Court's clarification of this

3   application as de facto precedence for future cases.  Since redaction is not appropriate for the

4   victim, it is even less appropriate for the arrested sexual predator Michael Polson, justifying

5   Discovery and disclosure of relevant evidence to be requested in the normal process of this case.

6

7

8                           NATURE OF ACTION AND JURISDICTION

9   This is a complaint for a violation of civil rights ("Bivens", from the SCOTUS decision of the

10  same name permitting causes of action against individual federal employees for Fourth

11  Amendment violations under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388

12  (1971)), seeking monetary damages in relief against the Defendant in his personal capacity for

13  committing acts, under color of law, against the rights of the Plaintiff.  Federal district courts

14  have subject-matter jurisdiction over Bivens claims under 28 U.S. Code § 1331, § 1343, § 2201

15  and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

16  *Pro se* Plaintiff was deprived of his fundamental 4th Amendment Constitutional right to be to be

17  secure in his person, against unreasonable searches and seizures; aggravated sexual assault is not

18  within the normal scope of employment for TSA, and is therefore the violation of a fundamental

19  right on Constitutional grounds, and not related to consensual searches or other approved job

20  functions.

21  While there is a body of law concerning excessive force and reasonableness with regards to

22  suspects and Constitutional rights, they concern themselves with suspects and policing powers.

23  Not only was the Plaintiff never a suspect nor in custody, but was merely an innocent traveler

24  attempting to transit a public space, and the TSA does not have arrest or forcible search powers

25

26

27

28

1   (Solomon v. United States (559 F.2d 309 5th Cir. 1977)).  This does not abrogate that a civilly-

2   prosecutable (under Bivens) aggravated sexual battery occurred in the context of a search under

3   color of law by the Defendant Polson.

4   Plaintiff is aware that case law does not obligate TSA or local police to provide police protective

5   services to the public, and those aspects are not part of the causes of actions in this Complaint.

6

7

8                                         CLAIMS

9   Pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388

10  (1971), a plaintiff may bring a civil rights suit against federal officials in their individual

11  capacities for damages caused by constitutional torts under color of their authority.   Plaintiff

12  claims that the sexual predator Defendant (Polson) perpetrated an aggravated sexual battery

13  against the Plaintiff, in violation of the 4th Amendment to the US Constitution, under this

14

15  codification of liability.

16

17  Constitutional and Civil Rights pursuant to Bivens:  Violation of 4th Amendment as a Bivens

18  action.

19

20      1.  Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

21      2.  Plaintiff alleges that the violations occurred as a result of proximate and direct causation

22          "under color of law" by virtue of TSA agent Michael Polson (in his individual capacity),

23          acting outside of proscribed procedures, while in-uniform and on-duty, with deliberate

24          indifference and recklessness (vice simply "careless indifference").

25          From Bivens v. Six Defendants, "the Fourth Amendment operates as a limitation upon

26          the exercise of federal power regardless of whether the State in whose jurisdiction that

27

28

power is exercised would prohibit or penalize the identical act if engaged in by a private

citizen. It guarantees to citizens of the United States the absolute, fundamental right to be

free from unreasonable searches and seizures carried out by virtue of federal authority.

And "where federally protected rights have been invaded, it has been the rule from the

beginning that courts will be alert to adjust their remedies so as to grant the necessary

relief." Bell v. Hood, 327 U.S., at 684, see also Bemis Bros. Bag Co. v. United States,

289 U.S. 28, 36 (1933) (Cardozo, J.); The Western Maid, 257 U.S. 419, 433 (1922)

(Holmes, J.).

3. Federal employees may become personally liable for constitutional deprivation by direct

participation, failure to remedy wrongs after learning about it, creation of a policy or

custom under which constitutional practices occur or gross negligence in managing

subordinates who cause violations. (Gallegos v. Haggerty, Northern District of New

York, 689 F.Supp. 93)  Sexual  predator Michael Polson is claimed to have become

personally liable by his direct participation in the felony sexual battery, his failure to

remedy the wrongs by refusing to apologize and simultaneously/concurrently laughing,

smiling, and joking disparagingly about the Plaintiff (despite being asked individually by

the Plaintiff for the Defendant to apologize, as well as in front of his supervisors), and his

managers (through specific actions, and not *respondeat superior* such as refusing to

apologize for sexual predator Michael Polson, or his managers asking Polson to

apologize, and them all laughing, back-slapping each other, and outwardly encouraging

deviant, malicious, sadistic, aggressive sexual behavior).  This instant case claims

liability by the Defendant due to his direct participation and failure to remedy wrongs

1   portions of Gallegos, by virtue of the acts and torts listed elsewhere in this complaint, and

2   demonstrated via referenced multiple sources of evidence.

3   4.  The 4th Amendment is applied beyond its recitation because the *pro se* Plaintiff

4   supported a violation of his 4th Amendment rights by the 'deliberate indifference and

5   recklessness' of the Defendant,' as these are defined elsewhere in this Complaint, and

6   supported by video (including screen captures provided in Exhibit A), audio recordings

7   of police/victim conversations, and written police and victim's statements, as well as

8   evidence to be obtained in Discovery and as might be further described by Plaintiff.

9

10  5.  An aggravated sexual battery qualifies as an unreasonable search (under Graham v.

11  Connor) and seizure qualifies (under California v. Hodari) for 4th Amendment or other

12  criminal assessment purposes and supportive in stating of a claim in either instance as a

13  violation of the 4th Amendment under Bivens.  Notably, even a lesser touching ("there

14  must be either the application of physical force, however slight") qualifies as a seizure

15  (under California v. Hodari), and is especially unreasonable in the context of an

16  aggravated sexual battery.   Regardless, Plaintiff asserts that the felonious aspect of the

17  battery is verifiable through the Plaintiff's statements, police confirmation of the incident

18  (battery), and via video recordings and other evidence as described above.  Similar cases

19  (under Section 1983 instead of Bivens, but dually applicable) have shown Defendants to

20  mistakenly assert a seizure instead of a search, and that seizure only relates to a custodial

21  context, as if the Plaintiff had been detained by the Defendant.  Aside from the alerting

22  concern that if the Defendant were to try to claim a seizure in this context, that the

23  Defendant would then be claiming policing powers and while still liable, that Plaintiff

24  pre-emptively would request to amend this claim for additional criminal consideration

25

26

27

28

1  and civil charges of the Defendant's illegal portrayal of a police officer, California v.

2  Hodari pre-emptively corrects the improper conclusion of a touching (however slight) not

3  being a seizure in its own right, and the inapplicability of a custodial seizure requirement

4  to the claims of this case. Whether predicated on a search or a seizure, an aggravated

5  sexual battery is clearly a violation of the 4th Amendment Constitutional rights of the

6  Plaintiff.

7  

8  6. Plaintiff has stated the assertion that Defendants' behavior showed deliberate indifference

9  and recklessness. These terms are defined in case law. "Deliberate indifference" requires

10  that a deliberate choice be made to do or not to do something. Farmer v. Brennan, Hill

11  v. DeKalb "Recklessness" is defined as "reckless disregard of, or indifference to" an

12  individual's rights or safety. Smith v. Wade, 103 S. Ct. 1625 (1983). For "deliberate

13  indifference" to exist, the causal connection between the deprivation of a federal right

14  must be such that the deprivation was a "plainly obvious consequence" of the decision.

15  (Brown) Plaintiff asserts that it does, since the self-pleasuring contact and striking of

16  another male in the groin by Defendant Michael Polson is clearly a deliberate choice (no

17  groin-striking Turret's Syndrome defense has been put forth by the sexual predator

18  Michael Polson).

19  

20  7. Though this is a 4th Amendment Bivens case, pro se Plaintiff wishes to dispel any

21  Defense shenanigans should they assert that an aggravated sexual battery is actually a due

22  process (14th Amendment) claim, and to attempt to negate this instant action on those

23  grounds. If the Court were to accede to such an attempt at misdirection, then pro se

24  Plaintiff is prepared to show that Stemler and Hill have both held that deliberate

25  indifference or recklessness are sufficient to state a claim under due process in a Section

1   1983 action (transferable to Bivens) demonstrating a violation of civil rights.  The

2   complaint's use of the term "deliberate indifference" to characterize the Defendant's

3   failures as sufficient to state a claim holding the Defendant responsible since the

4   complaint through its intended 4th Amendment basis, or 14th Amendment procedural

5   backstop, has alleged an incontrovertible constitutional violation.   Canton v. Harris, 109

6   S. Ct. 1197

7

8

9   FORFEITURE OF QUALIFIED OR OTHER IMMUNITIES

10  1.  Qualified immunity shields government officials from personal liability for civil damages

11  "insofar as their conduct does not violate clearly established statutory or constitutional rights

12  of which a reasonable person would have known." Harlow v.  Fitzgerald, 457 U.S. 800, 818

13  (1982).   Freedom from aggravated sexual battery (as documented in multiple evidentiary

14  sources described herein), is a clearly established fundamental right that a reasonable person

15  would have known, defeating any Defense claim of immunity based on Harlow.

16  2.  Those who are plainly incompetent or who knowingly violate the law cannot invoke

17  qualified immunity. Malley v. Briggs, 475 U.S. 335 (1986).  Lack of competence or willful

18  violation are also not dispositive, but rather affirmative of deliberate indifference or

19  recklessness.  As described previously, striking of another male in the groin is clearly a

20  willful violation, but even if the sexual predator Michael Polson were to claim his own

21  incompetence, this would still defeat any claim to qualified immunity under Malley.

22  3.  Qualified immunity for the Defendant is further defeated on two grounds:

23      a.  First, rather than this case being about unclaimed question about searches by TSA

24          being consensual, the first part of dispelling qualified immunity is that state statutes

(cited previously), plus the 4th Amendment to the Constitution, support the well-known illegality to strike another person in the groin, particularly in this case where the unprovoked and unwarranted attack by Michael Polson is clearly a violation of the Plaintiff's rights; and,

b. Second, that the reasonableness standard (from Harlow) asserts that a reasonable pat-down by the Defendant would not have a) required the more-slender-than-average-build Plaintiff to spread his legs wider than the footprints on the pat-down mat (arguably to give the Defendant "a clearer shot" at striking the Defendant in the groin), and b) the level of force applied was unreasonable, inappropriate, and unnecessary. A reasonable screener does not act this way without deliberate indifference and recklessness. If anything, a reasonable screener would err on the side of being too gentle, and then cautiously and with permission gently increased pressure, but not in a striking manner.

4. Furthermore, the subsequent behavior (laughter) by Michael Polson and documented refusal to apologize demonstrates that Polson's act was intentional (and in fact and by its legal definition, an "intentional tort,") and not even excusable via carelessness. Polson refused to attempt to cure his battery (under Gallegos) and to avoid further civil or criminal prosecution. Plaintiff explicitly attempted to de-escalate the situation (as is repeated documented in multiple TSA and police interactions), fearing precisely the humiliation, effort, public mockery, and expense involve in pursuit of a case such as this instant action. Plaintiff requested an apology immediately after the attack, and offered (in front of TSA and MWAA police) that he would allow all parties to walk away if the Defendant would apologize. The Defendant refused to do so, and his instead forced the Plaintiff through this humiliating

1   exercise in order to defend the Plaintiff's civil rights, and to avoid being attacked, mocked,

2   and injured again during future transits of airports where the Defendant may work, or where

3   the Defendant may relay (for example, through TSA affinity group social media) the

4   "opportunity" to strike, abuse, injure, and humiliate the Plaintiff, during the Plaintiff's

5   ongoing and frequent travels.  The Defendant's sadistic, mocking laughter and refusals to

6   apologize therefore contribute to not only defeating qualified immunity, but also to

7   supporting the high monetary damages claimed as Relief.

8

9   5.  Rebuttal of other immunities or preclusions typically asked of Bivens cases:

10      a.  There are no "special factors counseling hesitation in the absence of affirmative

11          action by Congress" with regard to aggravated sexual battery, covered under the

12          Fourth Amendment to the US Constitution, 403 U.S., at 396; Davis v. Passman, 442

13          U.S. 228, 245 (1979).

14      b.  Similarly, Congress has not provided an alternative remedy which it explicitly

15          declared to be a substitute for recovery directly under the Constitution and viewed as

16          equally effective.  Bivens, supra, at 397; Davis v. Passman, supra, at 245-247.  The

17          Federal Tort Claims Act (FTCA) is not an enforceable remedy due to its 28 USC

18          2680(h) exemption of claims stemming from assaults or batteries.  Despite this, the

19          FTCA administrative process was followed to support administrative exhaustion prior

20          to this case's filing.  Moreover, punitive damages not available in FTCA claims, are

21          available in state-level defendant Section 1983 actions (for a state instead of a federal

22          actor as defendant), Carey v. Piphus, 435 U.S. 247, 257, n. 11 (1978) as well as

23          Bivens claims, and Butz v. Economou, suggests that the "constitutional design"

1    would be stood on its head if federal officials did not face at least the same liability as

2    state officials guilty of the same Constitutional transgressions.  438 U.S., at 504.

3

4

## EXHAUSTION

5

6    Prior to filing of this suit, *pro se* Plaintiff exhausted all administrative and alternate – including

7    through the criminal justice system's -- remedies, also waiting for FTCA consideration (despite

8    its lack of a cause of action), and attempting an informal alternative dispute resolution discussion

9    prior to this instant action.  (Exhibits D and E)   Loudoun County Magistrates Kroy and Cuneen,

10   and Chief Magistrate Black, each refused (on the record) to accept a criminal complaint from the

11   victim, in violation of VA Code, and the Virginia Judicial Canon, with knowing refusal as

12   recorded.  The local Commonwealth Attorney is also aware of these violations.  The *pro se*

13

14   Plaintiff believes these to be a widespread dereliction of duty in violation of oaths worthy of

15   indictment!  To be clear, had these officials performed even a modicum of their required job

16   functions, the *pro se* Plaintiff's preference of addressing the lawlessness of the sexual predator

17   Michael Polson could have been handled through proper, criminal channels, commencing with

18   the requisite probable cause hearing.  But since all the named parties participated in the criminal

19   attempted cover-up of Michael Polson's crime, no hearing on the arrest of Michael Polson has

20

21   ever occurred, and it leaves the *pro se* Plaintiff no choice but to proceed with the only remaining

22   relief through this instant Bivens action.

23

24

## SPECIFIC NATURE OF ACTION AND RELIEF SOUGHT

25

26   1.  This is a civil rights action ("Bivens"), with remedies requested seeking

27        a.  as yet to-be-determined incurred (retrospective) damages,

28

b.  prospective monetary damages of $800,000,

c.  compensatory monetary damages of $10,000,000 (ten million dollars) for pain and suffering, and harm caused in requisite suffering and humiliation of having to disclose the violent sexual battery against his person by the sadistic sexual deviant Michael Polson,

d.  punitive damages of $20,000,000 (twenty million dollars)

   i.  Punitive damages are intended as a deterrent to future violations.  The aggravated sexual battery (per VA § 18.2-67.3) was committed at Dulles Airport, located in Loudoun County, Virginia, on March 10, 2016, within the geographic jurisdiction of the Eastern District of Virginia.  Pro se Plaintiff travels frequently through this airport for reasons including his occupation as an airline pilot, exposing him to the risk of future injury (most notably when he is off-duty and required to use public TSA checkpoints), since TSA procedures often require pat-downs.  Thus, the continued risk of harm is ongoing and real; a retrospective remedy will not cure the future constitutional deprivations, nor dissuade the sexual predator Michael Polson nor his colleagues from becoming repeat offenders.

e.  Further declaratory (injunctive) relief is not sought since SCOTUS opinions preclude any non-damage relief in a Bivens action, but as part of exhaustion, it is noteworthy that the County of Loudoun, Virginia, Magistrate's Office self-admittedly breached sexual battery victim's law obligations in violation of Virginia statutes AND Virginia Commonwealth Judicial Canon, as evinced three times in on-the-record audio recordings plus in written documents confirmed throughout Loudoun County

1  government offices, and <u>refused to accept a public criminal complaint against the</u>

2  <u>arrested suspect Michael Polson through Loudoun County Magistrates Kroy and</u>

3  <u>Cuneen. and Loudoun County Chief Magistrate Black</u> by the *pro se* Plaintiff.

4
5  2. All elements available for trial are requested to be heard in a trial by jury per FRCP 38(b)(1).

6

7  <u>BACKGROUND AND PROCEDURAL HISTORY</u>

8  On March 10, 2016 the Plaintiff was traveling through the pre-check lane at Dulles Airport. The

9  Plaintiff was in possession of several [documents previously filed with the Court and Defendant,

10  redacted here as SSI with the Plaintiff's full name, but incorporated by reference]. At the entry

11  to the pre-check area, TSA Agent Michael Polson asked the Plaintiff to surrender the

12  aforementioned documents, so that the Plaintiff would have nothing in his pockets or hands

13
14  while passing through the magnetometer (aka metal detector). This interaction was captured on

15  video recordings at the checkpoint. The Plaintiff explained that he could not permit the

16  documents out of his proximate custody due to [redacted as SSI, but incorporated by reference]

17
18  rules, but suggested (as the Plaintiff explained was customarily allowed at other TSA

19  checkpoints) that the Defendant simply and proximately inspect the Plaintiff's documents (which

20  numbered six or fewer and fit within the Plaintiff's standard pocket wallet) while in front of the

21  Plaintiff. This was unacceptable to the Defendant and resulted in a hostile response by Michael

22  Polson, who became agitated and raised his voice at the Plaintiff, all captured on videotape, and

23
24  evidence of the Defendant's unstable mental state and advance planning (malice of forethought)

25  of an attack on the Plaintiff. The Plaintiff attempted to have the Defendant calm down and call

26  the Defendant's supervisor; the Defendant refused, but demanded that the Plaintiff submit to a

27  pat down on the other side of the pre-check area. The Plaintiff agreed. Next, again on video, the

28

1   Plaintiff followed the Defendant's directions and stepped on the footprints on a floor mat,

2   identifying a standard pat down stance.  Defendant Polson then changed the instructions, to

3   instead have the Plaintiff spread his legs wider, so that the outside of each footprint now aligned

4   with the inside of each of the Plaintiff's feet.  It should be noted that the Plaintiff has an athletic

5   build with an "excellent" category BMI, as proven through video recordings of the incident

6
7   (BMI is referenced as self-evident on video, and medical records are restricted as non-dependent

8   PII).  The Plaintiff's athletic build eliminates any feeble attempt to justify Defendant's sadistic,

9   power-hungry order to have the Plaintiff spread his legs further, as not necessary or appropriate

10  given the obviously slim build of the Plaintiff.  When the Plaintiff queried the Defendant as to

11  why the Plaintiff should spread his legs wider than the proscribed footprints.   The Defendant

12  replied that was just the Defendant's preference.  The Defendant then inspected the Plaintiff's

13  wallet and cards while in proximity to the Defendant, and then returned the wallet to the

14
15  Plaintiff, as captured on security video.  But when performing a pat down a minute later, instead

16  of following TSA pat down guidelines, the Defendant rammed his hand into the genitals of the

17
18  Plaintiff, causing the Plaintiff to bend over and step away in pain.  This is memorialized on the

19  security video.  The Plaintiff immediately asked the Defendant why the Defendant struck the

20  Plaintiff, and the Defendant laughed in response and mumbled something akin to "too bad."  The

21  Plaintiff asked the Defendant to apologize, and when the Defendant refused, after 3-4 requests

22  (including to the Defendant's supervisor), the Plaintiff asked that the police be called to

23  investigate an aggravated sexual battery by the Defendant (Polson).

24
25  The MWAA police showed up about 5 minutes later, notably NOT for the request by the

26  Plaintiff to investigate an aggravated sexual battery, but for the false and misleading claim by

27  TSA for "an irate passenger."  (See Exhibit B)  Note that the Plaintiff was not irate, and that

28

1    video evidence, plus other recordings, and written reports all confirm this early falsification and

2    misdirection by the Defendant and his colleagues.  The Defendant had been taken around a

3    corner by co-workers, against the Plaintiff's objections – the Plaintiff was concerned and

4    believes that the Defendant was coached in what to say to the responding police (the location and

5    actions of all participants is memorialized on security videos.)  Other TSA agents physically

6

7    forced the Plaintiff to stand at a location where the view of the Defendant was obstructed (as

8    well as by the obese body of the ordering TSA agent, who also refused to give his name and is

9    curiously not mentioned in supposed reports of the incident and Polson's arrest, as will be

10   confirmed as true in identification and not derogatory via the airport security videos).  The police

11   took a statement from the Plaintiff, and apparently spoke with the Defendant.  The Plaintiff

12

13   requested to file a complaint with the police, and the police refused to document the incident or

14   to provide an incident # (despite as required for them to do per policy).  The Plaintiff asked them

15   to call their supervisor, and both police officers refused.  At no time did the police view the tapes

16   of the incident, contrary to their later claims that they did (see exhibit B).  The police have

17

18   refused to produce any corroborating evidence proving that they viewed the tapes, which is their

19   primary argument that the aggravated sexual battery (screen captured in Exhibit A) did not

20   occur.  Again, all this is captured on security videos and verified through radio and other records.

21   The Plaintiff attempted to obtain official ID identification of all (any) of the TSA personnel; all

22   refused to provide any ID or real names (this was again captured on security videos, though a

23

24   blond-haired female TSA supervisor, apparently from her business suit instead of a uniform, told

25   the Plaintiff her name was "Miss Fuck".  Plaintiff doubts the veracity of that claim, though this

26   was reported to the Defendant's apparent supervisors and to the MWAA Police in recorded and

27   written conversations, none of whom would correct or dispute her name.)  Plaintiff looks

28

1   forward to reviewing the security videos so as to compel identification and to depose Miss Fuck.

2   Note that MWAA police required full PII data from Plaintiff and transmitted it on an open

3   frequency, but did not check the felony sexual assault perpetrator for arrests or warrants (per

4   their testimony, disclosures to date, and observed behaviors). A quick check of public records

5   confirms that a person matching the Defendant's name, Michael Polson, has a criminal

6   background (see Exhibit C).

7

8   Given that the police cannot provide any exculpatory evidence of Michael Polson's aggravated

9   sexual battery of the Plaintiff, and that multiple sources of evidence affirm the Plaintiff's

10  allegations, Plaintiff is prepared to substantiate this to either the civil standard of preponderance

11  of evidence (clear and convincing proof) or other proscribed standard as the Court may find

12  appropriate in this instance.

13

14  After attempting to resolve this matter administratively and amicably through TSA and MWAA

15  procedures, the Plaintiff finally presented an administrative claim to the TSA in accordance with

16  their procedures and the Federal Tort Claims Act (see Exhibit D) on 12 June 2016. The TSA

17  responded by letter on 22 September 2016, assessing Plaintiff's claim as invalid due to the

18  Plaintiff's use of a pseudonym on the publicly disclosable portion of the form (see Exhibits D

19  and E), despite Plaintiff's offer of full name disclosure if restrict from public dissemination.

20  Plaintiff immediately replied via fax and email, and reminded the TSA again on 12 November

21  2016. After the statutory time passed, the Plaintiff is filing this instant action.

22

23

24

25

26

27

28

18

1       <u>EXHIBIT A:  Screen captures of felony sexual battery from security video</u>

2  Screen captures of the felony sexual battery from one of multiple airport security videos, the full

3  videos from multiple cameras of which demonstrate the full interaction and arrest of the sadistic

4  sexual deviant Defendant (Michael Polson) by the Plaintiff, along with witness tampering and

5  non-review of these tapes by responding MWAA police officers, making their report facially

6

7  false, while affirming the aggravated sexual battery against the Plaintiff





1           <u>EXHIBIT B:  Incident report from MWAA, initially not reported</u>

2   Police report (redacted by MWAA).  Plaintiff observed officers and disputes any review by them

3   of security video.  They did not witness the aggravated sexual battery.  Report confirms *pro se*

4   Plaintiff's common law arrest of Defendant Polson, and that request to transfer custody to the

5   MWAA police offers on-scene.  Note that this report was not filed willingly by the police, as

6

7   documented in recorded audio conversations.  It was filed upon a direct order from the

8   commanding supervisor Major Miller, after repeated exhortations and insistence from the

9   Plaintiff.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MWAA**

Incident ID: [redacted]
Page: 8

**Incident Data Sheet Report**

ORI Number: [redacted]
Printed On: 3/29/2016 12:01 (Tue)

**Narratives**

Narrative Title
Police Information

☑Locked

Narrative

On Thursday, March 10, 2016, at approximately 1156 hours, I was dispatched to the TSA Pre check lane 52 for the report of an irate passenger.

Upon my arrival, I located the individual and identified him by his [redacted] Operator's License as [redacted] Mr. [redacted] stated that he was sexually assaulted by a TSA officer and pointed to the TSA officer. TSA Manager, [redacted] was on scene and stated that a pat down was conducted by TSA officer Michael Polson on Mr. [redacted] that normal standard operating procedures were followed.

Mr. [redacted] stated that during the TSA pat down, the TSA officer forcefully "rammed" his hand in an upward motion, striking his testicles. Mr. [redacted] then stated that he felt like he was sexually assaulted.

Cpl. Solo and I responded to the TSA manager's office and reviewed camera footage of the incident, which did not support [redacted] accusations. Cpl. Solo explained to Mr. [redacted] that we didn't see anything out of the ordinary on the video.

Mr. [redacted] told the TSA Federal Security Director, [redacted], who was on scene, that he wants an apology from the TSA officer, and if he didn't receive an apology, he would make a citizen's arrest. [redacted] stated that no apology would be given due to no wrongdoing on TSA's part. [redacted] then stated he would make a citizen's arrest on the TSA officer and then pointed to myself and Cpl. Solo stating, "You will then take him into custody". I explained that I would not be taking the TSA officer to jail and that he can make a complaint with TSA, just as the director explained. [redacted] gave Mr. [redacted] an email address for his complaint. [redacted] told Mr. [redacted] that if he wanted to proceed to his flight, he would have to submit to a complete pat down. Mr. [redacted] agreed to the pat down by the TSA Supervisor, Mr. [redacted]. Cpl. Solo and I watched the second pat down, which appeared to be exactly like the first one from the video. During the second pat down, Mr [redacted] asked [redacted] for the camera # that recorded the original pat down. Ms. [redacted] said she would not disseminate that information and Mr. [redacted] stated that the footage would be subpoenaed. [redacted] told Mr. [redacted] let the TSA officer continue his pat down.

An NCIC/VCIN check was completed on [redacted] with negative results. Mr. [redacted] did not wish to give his phone number or social security number.

I gave Mr. [redacted] my business card with the call for service # [redacted] and all units were clear at approximately 1230 hours. Mr. [redacted] continued on to his flight after speaking with TSA.

The video footage of this incident was collected from Airport Operations and submitted as evidence in locker #8.

On scene:

TSA Federal Security Director – [redacted]
TSA Manager – [redacted]
TSA Manager – [redacted]
TSA Supervisor – [redacted] (completed second pat down)
TSA Screener [redacted] (completed original pat down)

| Created On | Created By | Updated On | Updated By |
|---|---|---|---|
| 3/11/2016 08:55 | MITCHELLI | 3/17/2016 10:20 | HORTONT |

<u>EXHIBIT C: Public records criminal record for Defendant Michael Polson</u>

Note that MWAA police required full PII data from Plaintiff and transmitted it on an open frequency, but did not check the felony sexual assault perpetrator for arrests or warrants (per their testimony and observed behaviors). A quick check of public records confirms that a person matching the Defendant's name, Michael Polson, has a criminal background.

1
2
3
4
5
6
7
8
9



10
11
12

# Search Successful - 1 Records found.

- Searched Michael Polson and found 1 records in VA
- Searched Mike Polson and found 0 records in VA

13
14
15
16
17
18

| Name | Age | Location | Result |
|------|-----|----------|--------|
| MICHAEL POLSON | 49 | ALEXANDRIA, VA | **View Results** |

19
20
21
22
23
24
25
26
27
28

<table>
<tr><td>1</td><td><u>EXHIBIT D:  FEDERAL TORT CLAIMS ACT (FTCA) SF-95 CLAIM</u></td></tr>
</table>

1

**EXHIBIT D:  FEDERAL TORT CLAIMS ACT (FTCA) SF-95 CLAIM**

2

Instructions:  "A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A

3

FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED
AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR

4

OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM
FOR MONEY."

5

6

No restriction is made on the use of pseudonyms to protect the dignity and privacy of felony
sexual assault victims, as specified by 18 USC 3771(a)(8), however, TSA paralegal Brett Barber

7

uses this excuse without standing to deem *pro se* Plaintiff's claim invalid in a letter from 22
September 2016.

8

9

Plaintiff offered to provide his full, legal name (see Exhibit E) as long as TSA (Barber) agreed to
not disclose it in public records or FOIA requests.  TSA (Barber) did not reply to two requests of

10

this nature.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**CLAIM FOR DAMAGE, INJURY, OR DEATH**

INSTRUCTIONS: Please read the instructions below carefully and supply all the information requested. You will receive an Acknowledgement Letter and Control Number.

FORM APPROVED OMB NO. 1105-0008

1. Submit To Appropriate Federal Agency:

Claims Management Branch
TSA (TSA - 9)
701 South 12th Street
Arlington, Virginia 20598-6009
571.227.1300
tsaclaimsoffice@tsa.dhs.gov

2. Name, Address of Claimant and claimant's personal representative, if any. (See instructions above.) (Number, street, city, state, and zip code)

Claimant Information:

Full Name: Capt. J. LINDHOLM
Address: PO Box
City, State, Zip:
Country: USA

Claimant's Representative: (if any)

Full Name:
Address:
City, State, Zip:
Country:

3. Type of Employment: ☐ Military ☐ Civilian

4. Date of Birth:

5. Marital Status: ○ Single ○ Married ○ Divorced ○ Widow/Widower

6. Day and Date of Accident: Thu. 10 Mar 16

7. Time (A.M. or P.M.): 11:40am

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.)

TSA screener Michael Polson perpetrated aggravated sexual battery at the Dulles Airport pre-check area per VA code § 18.2-67.3. The battery was captured on multiple video cameras (retention of evidence requested on 11 March 2016). Victim and witness is an off-duty airline pilot; the medical report supported serious and sustained injuries is available under NDA and seal without public disclosure. Per CVRA 18 U.S.C. § 3771, victim is referred to by a pseudonym, but can be contacted by mail, and actual name provided under NDA and seal without public disclosure. TSA screener Michael Polson was arrested at the TSA pre-check area for the crime of felony sexual battery on 10 March 2016 as documented in police reports. Polson struck the victim's genitals during a non-standard pat-down, resulting in serious, sustained injuries to the claimant.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, state, country, and Zip Code)

Full Name: Address: City, St. & Zip: Country:

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE, AND LOCATION WHERE PROPERTY MAY BE INSPECTED.

No property damage.

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

TSA screener Michael Polson was arrested at the TSA pre-check area for the crime of felony sexual battery on 10 March 2016 as documented in police reports. Polson forcefully struck the victim's genitals during a non-standard pat-down, resulting in serious, sustained injuries to the claimant.

11. WITNESSES

| Name | Address/Phone |
| --- | --- |
| 1. | |
| 2. | |
| 3. | |

12. AMOUNT OF CLAIM (in U.S. Dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| --- | --- | --- | --- |
| N/A | $500,000.00 | N/A | $500,000.00 |

I CERTIFY THAT THE AMOUNT OF THE CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

13a. SIGNATURE OF CLAIMANT OR CLAIMANT'S REPRESENTATIVE (See instructions above): Capt. J. Lindholm (pseudonym)

13b. PHONE NUMBER OF SIGNATORY: contact in writing

14. DATE OF CLAIM: 12 June 2016

CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM

The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.)

CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS

Fine of not more than $10,000 or imprisonment for not more than five (5) years or both. (See 18 U.S.C. 287, 1001.)

95-109 Previous editions not usable. NSN 7540-00-634-4046 Standard Form 95 (Rev. 7-85) PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 Page 2 of 4

(SF-95 form continued)

Note: Email address provided in-full on form; redacted here for privacy of Plaintiff.

Copy of fax copy of FTCA claim sent to TSA



And confirmation of transmittal and successful receipt by TSA, further confirmed by reply letter of 22 September 2016



## EXHIBIT E:  EMAILS WITH OPEN CONTACT BETWEEN TSA AND PLAINTIFF

Note:  Plaintiff's email was provided when these were sent, but was redacted for this filing.

1   Subject: Claim #2016071132555 - response to letter of 22 September 2016
    From: C JL <tsa@          .com>
    Date: 10/12/2016 12:08 AM
2   To: brett.barber@tsa.dhs.gov

3   Transportation Security Administration         11 October 2016
    Att: Mr. Brett Barber                          re: Claim #2016071132555

    Mr. Barber:
4   I am in receipt today of your letter of 22 September 2016. You asserted that my SF-95 was legally insufficient. I am the claimant who submitted and signed the form.
    Based on FTCA guidelines and instructions on the SF-95, I disagree that my claim was legally insufficient, and will submit the matter for adjudication along with a civil suit on 12 December 2016
5   if we cannot come to an agreement.

    I may be contacted more quickly by plain text email, though my email does not permit attachments (and automatically bounces those emails) for security reasons. You may send me longer
6   documents via fax at            . Letters sent to me require 2-3 weeks to reach me, due to my travel schedule, and should be sent via certified US mail.

    Based on Crumpton v. United States, 843 F. Supp. 751, 756 (D.D.C. 1994), since personal information may be disclosed at TSA's discretion in response to FOIA requests, the only way to comply
7   with 18 USC 3771 to safeguard the privacy of the victim (me) of a felony sexual battery, was to use a pseudonym on the SF-95, along with accurate and complete contact information (that you
    demonstrated you were able to use without hindrance).

    The purpose of the 6-month waiting period in the FTCA is to permit reasonable evaluation and accommodation of claims by your agency. Since I (as the claimant and victim) have met the
8   statutory requirements of the FTCA and the SF-95, and we have established a conduit for communication, I am glad to provide my full name after you confirm that it will not be subject to FOIA
    disclosure in violation of 18 USC 3771.

9   If you decide not to accept my name under this proper regulation from the DOJ, that is your decision. However, as of 12 December 2016, the 6-month waiting period (unless you deny my claim
    before then) will expire, and a civil suit will be filed.

10  Note also that under 5 USC 522a, the TSA has already collected my email address from the Eastern District of Virginia (Case No. 1:16-cv-00583-GBL-JFA) where my name and contact
    information are known to the TSA but redacted by Order of the Court. The TSA is therefore, through multiple channels, in possession of my full name and address, rendering any objection you
11  would have as moot.

    If you would like to proceed to evaluate my claim, I ask that you confirm the non-subjecting of any information provided to TSA for release through FOIA disclosure without a court order, and I
12  will be glad to provide information that you may need, while redacting personally identifiable information (as well as contact information) out of an abundance of caution for privacy as
    previously described and supported, and to maintain compliance with the Order of the Court in the case previously listed.

13  Regards,
    /signed/
    C. JL (I may be addressed as Captain JL)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **Subject:** Expiry of waiting period 11 Dec 2016 -- Re: Claim #2016071132555 - response to letter
   of 22 September 2016
2  **From:** C JL <tsa@        .com>
   **Date:** 11/18/2016 10:11 AM
3  **To:** brett.barber@tsa.dhs.gov

4  Mr. Barber:

5  I have still not received any reply beyond your asserted rejection as to my proper claim filed
   with your office.  You have not addressed your standing or authority to reject use of
6  pseudonyms in public communications for victims of felony sexual battery.  I have provided you
   with the federal statue and case law permitting such practices.

7  Since we have established an open communications channel, and I have offered my full name
   and contact information to you on the condition that it will not be publicly disclosed on your
8  personal liability as well as TSA's, your objections to not process my complaint are moot.

9  I remind you that the time period for us to complete an agreement expires on 11 December
   2016.  To minimize your costs and liability, as well as court involvement, I strongly urge you to
10 contact me as soon as possible to attempt to resolve this matter.

11 Regards,

   /signed/
12
   Capt. JL
13
   On 10/12/2016 12:08 AM, C JL wrote:
14
   Transportation Security Administration        11 October 2016
   Att:  Mr. Brett Barber                        re: Claim #2016071132555
15
   Mr. Barber:
16 I am in receipt today of your letter of 22 September 2016.  You asserted that my SF-95 was legally
   insufficient.  I am the claimant who submitted and signed the form.
   Based on FTCA guidelines and instructions on the SF-95, I disagree that my claim was legally insufficient,
17 and will submit the matter for adjudication along with a civil suit on 12 December 2016 if we cannot
   come to an agreement.

18 I may be contacted more quickly by plain text email, though my email does not permit attachments (and
   automatically bounces those emails) for security reasons.  You may send me longer documents via fax at
19          .  Letters sent to me require 2-3 weeks to reach me, due to my travel schedule, and should
   be sent via certified US mail.

20 Based on Crumpton v. United States, 843 F. Supp. 751, 756 (D.D.C. 1994), since personal information
   may be disclosed at TSA's discretion in response to FOIA requests, the only way to comply with 18 USC
21 3771 to safeguard the privacy of the victim (me) of a felony sexual battery, was to use a pseudonym on
   the SF-95, along with accurate and complete contact information (that you demonstrated you were able
22 to use without hindrance).

   The purpose of the 6-month waiting period in the FTCA is to permit reasonable evaluation and
23

24

25

26

27

28

accommodation of claims by your agency. Since I (as the claimant and victim) have met the statutory requirements of the FTCA and the SF-95, and we have established a conduit for communication, I am glad to provide my full name after you confirm that it will not be subject to FOIA disclosure in violation of 18 USC 3771.

If you decide not to accept my name under this proper regulation from the DOJ, that is your decision. However, as of 12 December 2016, the 6-month waiting period (unless you deny my claim before then) will expire, and a civil suit will be filed.

Note also that under 5 USC 522a, the TSA has already collected my email address from the Eastern District of Virginia (Case No. 1:16-cv-00583-GBL-JFA) where my name and contact information are known to the TSA but redacted by Order of the Court. The TSA is therefore, through multiple channels, in possession of my full name and address, rendering any objection you would have as moot.

If you would like to proceed to evaluate my claim, I ask that you confirm the non-subjecting of any information provided to TSA for release through FOIA disclosure without a court order, and I will be glad to provide information that you may need, while redacting personally identifiable information (as well as contact information) out of an abundance of caution for privacy as previously described and supported, and to maintain compliance with the Order of the Court in the case previously listed.

Regards,
/signed/
C. JL  (I may be addressed as Captain JL)

## EXHIBIT F:  DEFINITION OF AGGRAVATED SEXUAL BATTERY IN VIRGINIA

The complaint meets the requirement of this part by means of elements A(4) and A(4)(b), as substantiated on security video and subsequent injuries documented by Plaintiff.

Definition of aggravated sexual battery per VA 18.2-67.3.
Aggravated sexual battery; penalty.

A. An accused shall be guilty of aggravated sexual battery if he or she **sexually abuses** the complaining witness, and

1. The complaining witness is less than 13 years of age, or

2. The act is accomplished through the use of the complaining witness's mental incapacity or physical helplessness, or

3. The offense is committed by a parent, step-parent, grandparent, or step-grandparent and the complaining witness is at least 13 but less than 18 years of age, or

4. **The act is accomplished against the will of the complaining witness by force, threat or intimidation, and**

a. The complaining witness is at least 13 but less than 15 years of age, or

b. **The accused causes serious bodily or mental injury to the complaining witness, or**

c. The accused uses or threatens to use a dangerous weapon.

B. Aggravated sexual battery is a felony punishable by confinement in a state correctional facility for a term of not less than one nor more than 20 years and by a fine of not more than $100,000.

Definition of sexual abuse in Virginia's code:
2006 Code of Virginia § 18.2-67.10 - General definitions

18.2-67.10. General definitions.

As used in this article:

1. "Complaining witness" means the person alleged to have been subjected to rape, forcible sodomy, inanimate or animate object sexual penetration, marital sexual assault, **aggravated sexual battery**, or sexual battery.

2. "Intimate parts" means the **genitalia**, anus, groin, breast, or buttocks of any person.

3. "Mental incapacity" means that condition of the complaining witness existing at the time of an offense under this article which prevents the complaining witness from understanding the nature or consequences of the sexual act involved in such offense and about which the accused knew or should have known.

4. "Physical helplessness" means unconsciousness or any other condition existing at the time of an offense under this article which otherwise rendered the complaining witness physically unable to communicate an unwillingness to act and about which the accused knew or should have known.

5. The complaining witness's "prior sexual conduct" means any sexual conduct on the part of the complaining witness which took place before the conclusion of the trial, excluding the conduct involved in the offense alleged under this article.

6. **"Sexual abuse" means an act committed with the intent to sexually molest, arouse, or gratify any person, where:**

a. **The accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts;**

b. The accused forces the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts;

c. If the complaining witness is under the age of 13, the accused causes or assists the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts; or

d. The accused forces another person to touch the complaining witness's intimate parts or material directly covering such intimate parts.

1    NO ATTORNEY ASSISTED IN THE PREPARATION OF THIS DOCUMENT.

2    FRCP 11 already complied with by reference.

3    I certify that all statements are true and correct, to the best of my knowledge, under penalty of
     perjury.

4

5    _____                    _____
     signed                                       date

6

7

8    Addresses:

9    MICHAEL POLSON
     2707 Fordham Road, Alexandria, VA 22302

10   DEFENDANT HAS REFUSED TO PROVIDE A CONTACT PHONE NUMBER IN
     VIOLATION OF CivLR 7(B).  If not provided within 10 days of filing of this Complaint,

11   Plaintiff requests this Court to assign sanctions at its discretion, or Plaintiff will move to request
     sanctions.

12

13   Capt. James Linlor
     PO Box 1812, Zephyr Cove, NV  89448

14   (775) 298-1505

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31