**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JAMES LINLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Civil Action No. 1:17-CV-00013(JCC/JFA) |
| | ) |
| MICHAEL POLSON, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Pursuant to Federal Rules of Civil Procedure 12(b)(6), and Local Rule 7(F)(1), Defendant Michael Polson, through undersigned counsel, respectfully submits the instant reply memorandum of law in support of his motion to dismiss for failure to state a claim.

**INTRODUCTION**

Plaintiff James Linlor asks the Court to extend the limited remedy first recognized in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), to a new national security context. More specifically, Plaintiff seeks a *Bivens* remedy for what he purports was an intentional strike to his groin during a pat-down screening conducted by Defendant Michael Polson ("Officer Polson"), a Transportation Security Officer ("TSO") for the federal Transportation Security Administration ("TSA").[1] Plaintiff asks this Court to hold Officer Polson personally liable for damages under *Bivens.* In his opening memorandum, Officer Polson presented several reasons why the Court should dismiss Plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6)—namely, *Bivens* does not imply a cause of action in this context, and notwithstanding a *Bivens* remedy, Officer Polson is entitled to qualified immunity based on the factual allegations fairly incorporated into Plaintiff's operative complaint here.

In his opposition, Plaintiff fails to raise a meaningful challenge to Officer Polson's arguments for why dismissal is appropriate. Where Plaintiff attempts to respond to Officer Polson's arguments, his claims are often nonsensical, lack merit, ignore case law, and/or misconstrue both fact and law. As a threshold matter, Plaintiff appears to suggest that a *Bivens* remedy for an alleged constitutional violation (even, as here, when an alleged violation of a Fourth Amendment right is involved) is not an automatic entitlement, when the *direct opposite* is

---

[1] Plaintiff claims that defendant's use of the word "officer" in reference to Michael Polson is an attempt to mislead the Court and is a sanctionable offense. Dkt. No. 32, at 16 (Pl.'s Resp.). Nowhere in Defendant's memorandum does he claim to be a law enforcement officer with law enforcement authority. *See* Dkt. No. 27. Rather, at the time of the incident Michael Polson was employed by TSA as a *Transportation Security Officer*—thus, it is entirely appropriate and accurate to refer to Defendant as Officer Polson. In any event, Officer Polson's law enforcement authority or lack thereof, is wholly irrelevant to any of the relevant analyses in this case.

1

true – *i.e.*, that the presumption is *against* the imposition of a *Bivens* remedy. In addition, Plaintiff's claim that Officer Polson is not entitled to qualified immunity is without merit, where Officer Polson's actions on March 10, 2016 were completely consistent with the Constitution and were objectively reasonable under the circumstances—and because those actions did not violate any of Plaintiff's "clearly established" constitutional rights. This Court should dismiss the claims against Officer Polson.

## ARGUMENT

I.  **The Court Should Not Expand the *Bivens* Remedy To Plaintiff's Instant Claims Against Officer Polson That Arise Out of the National Security Context**

As explained in Officer Polson's opening brief, a *Bivens* remedy "is not an automatic entitlement," *see Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Instead, when deciding to imply a *Bivens* remedy for a particular alleged harm, the Court must consider whether there is an alternative remedial process and whether "special factors counsel[] hesitation before authorizing a new kind of federal litigation," *see id.*, with the presumption *against* the imposition of a *Bivens* remedy. *See Lebron v. Rumsfeld*, 670 F.3d 540, 547 (4th Cir. 2012); *see also Heap v. Carter*, 112 F. Supp. 3d 402, 428 (E.D. Va. 2015) (Cacheris, J.) (explaining that even though *Bivens* is "couched in seemingly broad terms," post-*Bivens* cases have established that the implied right of action against an individual has an "extremely narrow reach" (quotation omitted)). Officer Polson provided a fulsome analysis of the two-part analysis mandated by the Supreme Court's decision in *Wilkie v. Robbins*, 551 U.S. 537 (2007), and in the interest of judicial economy, will not repeat that discussion here.

It is, in all candor, a touch difficult to devine the exact nature of Plaintiff's response to this reasoning. But applying the principle that one should construe a *pro se* litigant's papers liberally, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it appears that Plaintiff responds to

this well-established precedent with two assertions: (1) that his claim against Officer Polson is not an extension or expansion of *Bivens*, but having been brought pursuant to the Fourth Amendment, is within the heartland of such claims; and (2) that excessive force claims generally do not implicate national security interests. *See* Dkt. No. 32, at 5-6 (Pl. Opp.). Neither of these arguments have merit.

a. Plaintiff first argues that his instant individual capacity claim would not require this Court to expand *Bivens* because his claim is—like *Bivens*—predicated on a putative Fourth Amendment violation. While Plaintiff is correct that in *Bivens* the Supreme Court held that federal law enforcement officers may face personal monetary liability for participating in a search or seizure that violates the Fourth Amendment, no court has implied a Fourth Amendment *Bivens* remedy in the unique context presented here: the aviation security screening process. And that makes all the difference.

The mere fact that a particular constitutional provision has been the subject of a *Bivens* claim in the past does not create a cause of action under that amendment in all circumstances in all contexts. And for this reason, courts have repeatedly rejected Plaintiff's exact argument here, holding that *Bivens* actions "are not recognized Amendment by Amendment in wholesale fashion," but rather, "are context specific." *Wilson v. Libby,* 498 F. Supp. 2d 74, 86 (D.D.C. 2007), *aff'd*, 535 F.3d 697 (D.C. Cir. 2008); *see also Meshal v. Higgenbotham*, 804 F.3d 417, 423 (D.C. Cir. 2015) ("[E]ven if the Plaintiff alleges the same type of constitutional violation, it does not automatically invoke the same context for *Bivens* purposes.").

Indeed, the Supreme Court has only expressly permitted a *Bivens* cause of action under three constitutional amendments in three particular cases (*Bivens*, 403 U.S. 388, *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980)), but explicitly has not

3

construed those cases to create a *Bivens* remedy in all contexts under those amendments. *Compare Davis*, 442 U.S. 228 (permitting Fifth Amendment claim under Bivens) with *Schweiker v. Chilicky*, 487 U.S. 412 (1988) (declining to recognize a Fifth Amendment claim in a different context). And the "Court has been reluctant to extend *Bivens* liability to any new contexts or new category of defendants." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2013) ("The Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in new contexts."). Put simply, because "it is not enough for Plaintiff[] to point to cases recognizing *Bivens* actions" under the Fourth Amendment generally," *Wilson*, 498 F. Supp. 2d at 86, Plaintiff's first argument must fail.

b.  Plaintiff's second argument fares no better. As Officer Polson explained in his opening memorandum, see Dkt. No. 27, at 14-20, creating a *Bivens* remedy is inappropriate in the instant case because the ubiquitous national security interests inherent in the airport security-screening context constitute special factors "counsel[ing] hesitation." *Arar*, 585 F.3d at 573-74. The Supreme Court has recognized the "particularly acute" security interest at airport checkpoints. *City of Indianapolis v. Edmond*, 531 U.S. 32, 47-48 (2000); *see also United States v. Herzbrun*, 723 F.2d 773, 776 (11th Cir. 1984) ("Due to the intense danger of air piracy," airport security checkpoints are "'critical zones' in which special fourth amendment considerations apply"). As Officer Polson explained, TSA screening officers (and more importantly, the screening process for air travel) play a vital role in maintaining national security, as Congress has recognized, which is a special factor that counsels against hesitation.

Plaintiff does not dispute either that courts have held that the national security context serves as a "special factor counseling hesitation" in the creation of a *Bivens* remedy, or that the aviation screening process is itself part of that national security context; indeed, Plaintiff appears

4

to acknowledge that TSA has an important role in national security, noting "[n]othing in Plaintiff's complaint challenges the TSA's reasonable security mission." Dkt. No. 32, at 11. Instead, despite this concession, Plaintiff's principal contention is—that his *Bivens* claim does not implicate national security because "Defendant does not explain how violently striking a compliant passenger's genitals without cause is a matter of national security"; and "Defendant's references [to national security] do not apply." Dkt. No. 32, at 10. But this misses the point of the "special factors" analysis, which provides that it is the *context* in which the allegations of unconstitutional conduct arise – and not the allegations themselves – that matter. Put differently, no matter how mundane or traditional the allegations of unconstitutional conduct may be, "special factors" will still "counsel hesitation" in the creation of a *Bivens* remedy is those allegations *arise* out of a context in which the courts have expressed concern. The district court's decision in *Meshal v. Higgenbotham*, 47 F. Supp. 3d 115 (D.D.C. 2014), *aff'd*, 804 F.3d 417 (D.C. Cir. 2015). In *Meshal*, the district court rejected much the same argument that Plaintiff presents here – *i.e.*, that because his claim "concern[ed] only *the manner* in which four federal law enforcement officers treated" him, the "special factor" of national security was not implicated, and the court could imply a *Bivens* remedy. *Id.* at 124. Both the district court and District of Columbia circuit rejected this position, recognizing that regardless of the fact that Plaintiff's allegations appeared to sound in nothing more than garden-variety law enforcement misconduct, because those allegations arose out of a context fraught with national security concerns, a *Bivens* remedy would not lie. *See id.* at 125-31. And so it is here.

## II.    Officer Polson is Entitled to Qualified Immunity

Even if the Court creates a *Bivens* remedy in this new context, Plaintiff's constitutional claims should nonetheless be dismissed because Officer Polson, an individual capacity

defendant, is entitled to qualified immunity. Qualified immunity protects government officials from suit for allegedly unconstitutional conduct unless they violate "clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, Plaintiff's allegations do not establish a clear violation by Officer Polson of a clear constitutional right possessed by Plaintiff. *See* Dkt. No. 27, at 29-30; *Saucier v. Katz*, 533 U.S. 194, 200 (2001) ("If no constitutional right would have been were the allegations established, there is no necessity for further inquiries concerning qualified immunity"); *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015).

As shown below and in Officer Polson's Memorandum, Plaintiff fails to plead sufficient facts establishing the security screening executed by Officer Polson was an unreasonable administrative search that violated his Fourth Amendment rights, and Plaintiff has not plausibly pled that Officer Polson specifically deprived him of any clearly established Fourth Amendment right. Contrary to Plaintiff's bombastic assertions (*see* Dkt. No. 32, at 14-20), Officer Polson is indeed entitled to qualified immunity.

**A.     Plaintiff failed to plead a plausible violation of the Fourth Amendment**

At the first step in the qualified immunity framework, Plaintiff must have pled a plausible claim of constitutional deprivation. As an initial matter, in his response, Plaintiff concedes that TSA's pat-down screening standard operating procedure does not violate the Fourth Amendment's prohibition on unreasonable searches and seizures. Dkt. No. 32, at 16 ("Plaintiff is not challenging TSA's security screening procedures, or even that a pat-down be required"). Moreover, Plaintiff is not claiming that there is a clearly established constitutional right to be free from reasonable administrative searches conducted at airport screening areas. *Id.* In his response, Plaintiff clarifies that his claim solely alleges that his Fourth Amendment rights were

6

violated as a result of the *particular* force utilized by Officer Polson during the pat-down. *Id.* Thus, the issue here is whether Officer Polson engaged in objectively reasonable conduct in carrying out the pat-down screening of Plaintiff— and to this end, Plaintiff has not plausibly pled that Officer Polson specifically deprived him of any Fourth Amendment right.

For a complaint alleging a *Bivens* claim to survive a motion to dismiss, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S at 676. The *Iqbal* Court employed a two-pronged approach for evaluating the sufficiency of a complaint: (1) identifying the conclusory allegations that are not entitled to the assumption of truth; and (2) evaluating the remaining allegations to determine if they plausibly suggest an entitlement to relief. *Iqbal*, 556 U.S. at 677-81. The *Iqbal* Court explained a complaint does not "suffice if it tenders 'naked assertions[s]' devoid of further factual enhancements.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The Court must then assess the remaining facts or allegations themselves to determine if they are consistent with lawful conduct, in other words, could be explained as an official lawfully carrying out his duties. *Cf. Iqbal*, 556 U.S. at 679-80; *Twombly*, 550 U.S. at 567 (concluding that although conduct with consistent with unlawful behavior, allegations did not suggest illicit accord because it was not only compatible with, but indeed more likely explained by lawful behavior). Thus, even when a complaint contains factual allegations that are "consistent with" illegal conduct, the complaint cannot survive a motion to dismiss when the allegations are more likely explained by legal conduct. *Iqbal*, 556 U.S. at 678. To this end, the Court observed that determining whether a complaint states a plausible claim for relief will require the court "to draw on its judicial experience and common sense." *Id.* at 679. Given the

7

allegations of Plaintiff's complaint, and the materials fairly incorporated into the same, this final part of the *Iqbal* mandate is of particular importance.

As explained in Officer Polson's brief, Plaintiff's claim is for excessive force under the Fourth Amendment—and, in order to pass constitutional muster, a law enforcement officer's use of force must merely be "objectively reasonable" under the circumstances. *See Graham v. Conner*, 490 U.S. 386, 394-95 (1989). While the amended complaint may contain allegations which establish the "sheer possibility" that Plaintiff was the victim of an unreasonable use of force during the pat-down screening, *Iqbal,* 556 U.S. at 678, the allegations are not enough to state a "plausible" claim of an unreasonable use of force under the Fourth Amendment, *Twombly*, 550 U.S. at 570. Put simply, if the complaint—and those materials that are fairly incorporated into the same and thus must be considered by this Court as a part of its plausibility analysis – merely demonstrate that contact with Plaintiff's genitals, if any at all, was incidental and occurred through the course of a typical security pat-down.

To the extent that Plaintiff is contending that the pat-down he received was unreasonable under the Fourth Amendment because Officer Polson intentionally deviated from TSA's reasonable standard operating procedures, he has failed to present plausible allegations that are sufficient to state a claim. As discussed in Officer Polson's memorandum, the Court should consider the CCTV video surveillance footage in engaging in this plausibility analysis. *See* Dkt. No. 27; *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). The video shows—in real time—Plaintiff's security screening pat-down conducted by Officer Polson and demonstrates that contact with Plaintiff's genitals (if any at all) was purely coincidental, minor, and borne of the pat-down procedures that Plaintiff concedes are perfectly constitutional.[2] More

---

[2] As set forth more fully in Defendant's memorandum, TSA's standard operating procedure for pat-down security screenings require a TSO screener to place "one hand on [a passenger]'s

importantly, nothing in the CCTV footage at all demonstrates that Officer Polson intentionally struck Plaintiff in the groin in any way, let alone that he intentionally "rammed his hand into the genitals of the Plaintiff." *See* Dkt. No. 12; *cf. Scott v. Harris*, 550 U.S. 372, 378-80, 379 n.5 (2007), (holding that when video evidence "clearly contradicts" the testimony of a party so that no reasonable jury could believe it, a court should not credit that party's testimony in considering the evidence). In short, with the addition of the CCTV footage that Plaintiff fully incorporates into his complaint, there is simply no non-conclusory allegation that would render plausible the conclusion that Officer Polson utilized objectively-unreasonable force.

Instead, Plaintiff now attempt to distance himself from the CCTV footage. Plaintiff cannot now—because it contradicts the allegations in the amended complaint—self-servingly disavow reliance on the CCTV video footage of his security screening. Dkt. No. 32, at 17. In his response, Plaintiff—for the first time—claims he included the two screen shots from that CCTV video footage as exhibits *solely* to establish the identity of Officer Polson as his "assailant." Dkt. No. 32, at 17. Despite these recent self-serving disavowals, Plaintiff's amended complaint *repeatedly* refers to the CCTV video footage in support of the merits of his claims about Officer Polson's conduct; *e.g.,* Officer Polson's conduct "was . . . recorded on airport security video cameras," Dkt. No. 12, at 3; "violation of his 4th Amendment rights . . . supported by video (including screen captures provided in Exhibit A)," *id.* at 4; "interaction was captured on video

---

inner-thigh, the other hand on [the passenger]'s hip, and slide[s] the hand on the inner-thigh up until meeting resistance." *Corbett v. TSA*, 568 F. App'x 690, 692 (11th Cir. 2014); *see also* 81 Fed. Reg. at 11,385 ("Since a pat-down is conducted to determine whether prohibited items are concealed under clothing, sufficient pressure must be applied in order to ensure detection."). Far from a "violent strike," what the more likely scenario (and what the video shows) is that Officer Polson ran the back of his hand along the inside of Plaintiff's thigh in an antiseptic, regimented manner that is typical of a TSA pat-down screening. Such a limited exertion of force is constitutionally reasonable in carrying out the standard pat-down screening procedure. *See Corbett*, 767 F.3d at 1182 ("[u]ndeniably, a full-body pat-down intrudes on privacy, but the security threat outweighs that invasion of privacy").

recordings at the checkpoint," *id.* at 15; "[incident] all captured on video tape," *id.*; "next, again on video," *id.*; "as captured on security video," *id.* at 16; "[t]his is memorialized on the security video," *id.*; "that video evidence . . . confirm," *id.* at 17; "the location and actions of all participants is memorialized on security videos," *id.*; "will be confirmed . . . visa airport security videos," *id.*; "[a]gain, all this is captured on security videos and verified through radio and other records," *id.*; and "this was again captured on security videos," *id.* It is hard to imagine a more compelling set of circumstances to demonstrate when a plaintiff has incorporated a video into his complaint, or, at the very least, where a video is "integral" to a complaint. *Goines*. 822 F.3d at 166; *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

But even if the Court were to decline to consider the CCTV video evidence, under the *Iqbal* standard, this court should reject as "bare assertions" Plaintiff's conclusory allegations that Officer Polson committed "aggravated" "felony sexual battery" during the TSA security screening pat-down. *Iqbal* at 681. Plaintiff continues to make "bare assertions" that Office Polson is a sexual deviant who was arrested for committing felony sexual battery during the TSA pat-down screening—as if his repeating these bare, conclusory allegations *ad nauseam* throughout the amended complaint (and subsequent filings) is itself sufficient to plead a plausible claim. *Iqbal,* 556 U.S. at 679. Unfortunately, for Plaintiff, the Federal Rules of Civil Procedure and precedent interpreting those rules require more. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009) (court declines to consider "unwarranted inferences, unreasonable conclusions, or arguments").

Contrary to Plaintiff's claims, Plaintiff has not pled factual content that allows the court to draw the reasonable inference that Officer Polson is liable for a violation of Plaintiff's Fourth Amendment right against unreasonable search and seizure. Simply stated, the question under

Rule 12(b)(6) is whether the facts supporting the claims, if established, create legally cognizable theories of recovery—Plaintiff falls short of that standard. Accordingly, without facts that Officer Polson deviated from procedure and acted in an objectively unreasonable manner in violation of Plaintiff's Fourth Amendment right, Plaintiff fails to state a cognizable claim under the Fourth Amendment.

B.  **Plaintiff's Allegations Do Not Constitute a Violation of Clearly Established Law Under the Fourth Amendment**

Even if the Court were to conclude that Plaintiff had sufficiently alleged a violation of the Fourth Amendment, Office Polson would still be entitled to qualified immunity because there was no law clearly establishing the specific degree of permissible intrusiveness of a security screening pat-down by a TSO. *Saucier v. Katz*, 533 U.S. 194, 205 (2001). As the Fourth Circuit has held, qualified immunity exists so that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Wilson v. Kittoe*, 337 F.3d 392, 402–403 (4th Cir. 2003). Plaintiff claims that Officer Polson's "ignorance of the law" is not a legally accepted defense, and that "[t]hose who are plainly incompetent or who knowingly violate the law cannot invoke qualified immunity." Dkt. No. 32, at 19-20. Plaintiff misapprehends the law.

Qualified immunity "erects a substantial barrier for plaintiffs." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994). It "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986); *see Saucier*, 533 U.S. at 205; *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)(immunity accommodates "reasonable error" because "'officials should not err always on the side of caution' because they fear being sued")(citation omitted). Where "officers of reasonable competence could disagree" on the lawfulness of the conduct, "immunity should be recognized." *Malley*, 475 U.S. at 341. Applying these principles to the constitution claim

11

asserted by Plaintiff, it is clear that those claims cannot survive Officer Polson's assertion of qualified immunity.

In determining whether the force used to effectuate a search or seizure is reasonable, a court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham*, 490 U.S. at 395. The Supreme Court has recognized the existence of a "'hazy border between excessive and acceptable force,'" *Saucier*, 533 U.S. at 206 (citation omitted), and has cautioned courts not to engage in unrealistic second-guessing of the actions of officers in the field. *See Graham*, 490 U.S. at 396 ("'Not every push or shove, even it if may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment.' ") (citation omitted).

Here, what would constitute excessive force in what is known to be an intrusive security screening procedure is far from clear. Officer Polson's job duties and obligations as a TSO required him to ensure "the screening of all passengers and property." 49 U.S.C. § 44901(a). And as explained above, TSA's standard operating procedure for pat-down security screenings require a TSO screener to place "one hand on [a passenger]'s inner-thigh, the other hand on [the passenger]'s hip, and slide[s] the hand on the inner-thigh up until meeting resistance." *Corbett*, 568 F. App'x at 692 (11th Cir. 2014); *see also* 81 Fed. Reg. at 11,385. This screening high on the inner thigh is critically necessary because government intelligence indicates that terrorists are seeking to conceal threats in the groin area in an effort to defeat security screening. *See, e.g., See George v. Rehiel,* 738 F.3d 562, 578 (3d Cir. 2013) (noting that TSA operates "in a world where air passenger safety must contend with such threats as attempts to convert underwear into bombs").

Officer Polson's job duties and obligations as a TSO required him to screen individuals for weapons, explosives, and incendiaries—under the circumstances of this case, he was obligated to conduct a security screening pat-down on Plaintiff, irrespective of the intrusiveness of the procedure. *Raub*, 785 F.3d at 881-82 ("we look not to whether the right allegedly violated was established 'as a broad general proposition' but whether 'it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted'") (quoting *Saucier*, 533 U.S. at 201-202)). Under the circumstances, Office Polson's conduct was eminently reasonable, and he is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the amended complaint for failure to state a claim.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____/s/_____
NICOLE N. MURLEY
Special Assistant U.S. Attorney
DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3831
Fax:        (703) 299-3983
Email:  Nicole.N.Murley@usdoj.gov

DATE: June 1, 2017                        ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and I caused a true and correct copy of the foregoing to be sent to the following via first-class mail:

James Linlor
P.O. Box 1812,
Zephyr Cove, NV 89448

Date: June 1, 2017　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　NICOLE N. MURLEY
　　　　　　　　　　　　　　　　　　　Special Assistant U.S. Attorney
　　　　　　　　　　　　　　　　　　　2100 Jamieson Avenue
　　　　　　　　　　　　　　　　　　　Alexandria, Virginia 22314
　　　　　　　　　　　　　　　　　　　Telephone: (703) 299-3831
　　　　　　　　　　　　　　　　　　　Fax:　　　(703) 299-3983
　　　　　　　　　　　　　　　　　　　Email:  Nicole.N.Murley@usdoj.gov

　　　　　　　　　　　　　　　　　　　ATTORNEYS FOR DEFENDANTS