IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

CAPTAIN JAMES LINLOR,          )
                               )
        Plaintiff,             )
                               )
        v.                     )     1:17cv13 (JCC/JFA)
                               )
MICHAEL POLSON,                )
                               )
        Defendant.             )
                               )

## M E M O R A N D U M   O P I N I O N

Plaintiff *pro se* James Linlor alleges that Defendant Michael Polson struck him in the groin during an airport security screening.  He contends that this constituted an excessive use of force under the Fourth Amendment and seeks to recover damages from Defendant pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

The case is before the Court now on Defendant's Motion to Dismiss [Dkt. 25] and Motion for Leave to File DVD with Clerk of Court [Dkt. 29].  For the reasons that follow, the Court will deny Defendant's Motion to Dismiss and grant Defendant's Motion for Leave to File DVD with Clerk of Court.

## I. Background

Pared of irrelevancies and invectives, the facts set forth in Plaintiff's Amended Complaint are straightforward. On March 10, 2016, Plaintiff travelled through Washington Dulles International Airport. *See* Am. Compl. [Dkt. 12] at 15. Plaintiff encountered Defendant, a Transportation Security Officer, while attempting to pass through airport security. *See id.* Defendant instructed Plaintiff to surrender certain documents Plaintiff had on his person before passing through the airport's screening equipment. *Id.* Plaintiff refused and was therefore required to submit to a manual pat down conducted by Defendant. *Id.*

Plaintiff stepped onto the rug reserved for that purpose, placing his feet in the footprint outlines. *See id.* at 16. Defendant then instructed Plaintiff to widen his stance unnecessarily. *See id.* At that point, while Plaintiff was vulnerable, Defendant "rammed his hand into the genitals of the Plaintiff, causing the Plaintiff to bend over and step away in pain." *Id.* Plaintiff alleges that Defendant took this action out of anger, either intentionally or recklessly, and that Defendant subsequently laughed and refused to apologize. *See id.* Police were summoned after Plaintiff complained of "aggravated sexual battery," but the police officers refused to take any action against Defendant. *Id.* at 16-17. Defendant's

2

coworkers stone-walled Plaintiff when he attempted to gather the names of witnesses. *Id.* at 17.

Plaintiff submitted an administrative claim to the TSA contesting his treatment, but did so using a pseudonym. *Id.* at 18. Because Plaintiff did not provide his true name, the TSA refused to process his claim. *Id.* Plaintiff subsequently filed suit in this Court, again employing a pseudonym. The Court, however, found that pseudonymous litigation was not warranted by the facts of the case. Accordingly, the Court ordered Plaintiff to file an amended complaint including his true name, and Plaintiff complied.

On May 10, 2015, Defendant filed the instant Motion to Dismiss for Failure to State a Claim [Dkt. 25]. Defendant also submitted a DVD containing security camera footage of the incident giving rise to this lawsuit along with a Motion for Leave to File DVD with Clerk of Court [Dkt. 29].

## II. Legal Standard

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor.  *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted).  "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'"  *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir.2006)) (alterations in original).  Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

In evaluating Defendant's Motion, the Court is mindful that Plaintiff is proceeding in this matter *pro se*.  A "document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III. Analysis

Defendant argues that Plaintiff's Amended Complaint must be dismissed because (1) there is no *Bivens* remedy available in this context and (2) Defendant is entitled to qualified immunity.  The Court addresses these arguments in turn.

### A. The Availability of a *Bivens* Remedy

By itself, "[t]he Constitution does not ordinarily provide a private right of action for constitutional violations by federal officials." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 859 (10th Cir. 2016).  The Supreme Court, however, held in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971), that "violation of [the Fourth Amendment] by a federal agent . . . gives rise to a cause of action for damages" directly under the Constitution, without the need for a congressionally created remedy.

Since then, *Bivens* has been applied sparingly, as the Supreme Court has "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988).  The Court has made clear that no *Bivens* remedy should be implied where "any alternative, existing process for protecting the interest [at issue] amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v.*

5

*Robbins*, 551 U.S. 537, 550 (2007).  *Bivens* relief is further limited to situations in which "no special factors counsel[ ] hesitation."  *Bivens*, 403 U.S. at 396.

Against this backdrop, "[i]t is clear that expansion of a *Bivens*-based cause of action . . . is the exception, not the rule."  *Cioca v. Rumsfeld*, 720 F.3d 505, 510 (4th Cir. 2013).  Indeed, as is often observed, since *Bivens* the Supreme Court has only twice implied similar remedies in new contexts. *See Davis v. Passman*, 442 U.S. 228 (1979) (finding a *Bivens* remedy for violation of the Due Process Clause of the Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (finding a *Bivens* remedy for violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment).

Moreover, "*Bivens* actions are not recognized Amendment by Amendment in a wholesale fashion" but "are context-specific." *Wilson v. Libby*, 498 F. Supp. 2d 74, 86 (D.D.C. 2007), *aff'd*, 535 F.3d 697 (D.C. Cir. 2008).  "For example, a *Bivens* action alleging a violation of the Due Process Clause of the Fifth Amendment may be appropriate in some contexts, but not in others."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 484 n.9 (1994). Accordingly, the fact that Plaintiff invokes the Fourth Amendment – the subject of *Bivens* itself – does not end the Court's inquiry as to whether a *Bivens* remedy is appropriate here.  *Cf. De La Paz v. Coy*, 786 F.3d 367, 380 (5th Cir. 2015)

6

(declining to imply a *Bivens* remedy for alleged Fourth Amendment violations by Customs and Border Patrol agents in the course of civil immigration removal proceedings).

### 1. Whether This Case Presents a New Context

The Court must first determine whether the case at bar presents a novel context requiring an extension of *Bivens*, or if it instead falls within the ambit of the remedy as it is already recognized. The Court notes first that *Bivens* has long been understood to provide a remedy for excessive force claims under the Fourth Amendment. *See, e.g.*, *Schultz v. Braga*, 455 F.3d 470, 479–80 (4th Cir. 2006). Moreover, other courts have applied *Bivens* to airport security screenings by TSA officials without suggesting that this presents a novel context*. See, e.g.*, *George v. Rehiel*, 738 F.3d 562, 568–69 (3d Cir. 2013) (assuming that a *Bivens* remedy is available where a TSA officer violates the Fourth Amendment in connection with an airport security screening); *Corbett v. Transportation Sec. Admin.*, 568 F. App'x 690, 697–98 (11th Cir. 2014) (same); *Hernandez v. United States*, 34 F. Supp. 3d 1168, 1184 (D. Colo. 2014) (same); *Mocek v. City of Albuquerque*, No. CIV 11-1009 JB/KBM, 2013 WL 312881, at *58–63 (D.N.M. Jan. 14, 2013) (same). Most saliently, in *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013), the Fourth Circuit held that an individual had plausibly alleged a First Amendment *Bivens* claim against TSA officers in connection

with an airport security screening.  In so holding, the Court
suggested that the airport setting does not, in and of itself,
insulate federal officers from constitutional claims.  *See id*.
at 393 ("We . . . are therefore unwilling to relinquish our
First Amendment protections — even in an airport.").

As the dissent in *Tobey* pointed out, however, the
Fourth Circuit only assumed, but did not decide, that a *Bivens*
remedy would lie in connection with an airport security
screening. *See* 706 F.3d at 405 n.* (Wilkinson, J., dissenting).
Accordingly, *Tobey* does not resolve the issue now before the
Court.  *See De La Paz*, 786 F.3d at 373-80 (finding no *Bivens*
remedy in a context where the Court had previously assumed one
to lie).

Moreover, the Supreme Court has recently clarified
that "the new-context inquiry is easily satisfied." *Ziglar v.
Abbasi*, No. 15-1358, __ S. Ct. __, 2017 WL 2621317, at *22 (U.S.
June 19, 2017).  It is met wherever a "case is different in a
meaningful way from previous *Bivens* cases[.]"  *Id.* at *15.  A
new context may be presented even where the difference between
the past and present case is "small . . . in practical terms."
*Id.* at *22.

As Defendant points out, this case does not concern
the type of law enforcement activity at issue in a typical
Fourth Amendment *Bivens* suit, but rather an airport screening by

8

a Transportation Security Officer.  Under the test outlined in
*Abbasi*, this difference in setting and class of Defendant is
sufficient to create a new "context" for purposes of the *Bivens*
analysis.  The Court therefore addresses the propriety of an
extension of the *Bivens* remedy here.

### 2. Alternative, Existing Processes

A *Bivens* claim will not lie where "any alternative,
existing process for protecting the interest amounts to a
convincing reason for the Judicial Branch to refrain from
providing a new and freestanding remedy in damages."  *Wilkie*,
551 U.S. at 550.  Defendant points to three alternative remedial
processes, arguing that they foreclose a *Bivens* remedy here.
The Court disagrees.  Indeed, the Court has little difficulty
concluding that the alternatives suggested by Defendant are no
alternatives at all.

Defendant first argues that the availability of claim
under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b),
2401, 2671-2680, counsels against implying a *Bivens* remedy here.
But as Defendant acknowledges, the Supreme Court has squarely
held that the FTCA does not provide an alternative remedial
process bearing on the availability of a *Bivens* remedy.  *See*
*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting
that it is "'crystal clear' that Congress intended the FTCA and
*Bivens* to serve as 'parallel' and 'complementary' sources of

9

liability") (quoting *Carlson v. Green*, 446 U.S. 14, 20 (1980)).
While Defendant contends that the availability of an FTCA claim
is "one factor" the Court may consider in deciding whether to
imply a *Bivens* remedy, the law is unambiguous that this "factor"
is entitled to little, if any, weight.  *See id.*  An FTCA claim
is simply not "a substitute for a *Bivens* action."  *Bush v.
Lucas*, 462 U.S. 367, 378 (1983).

Moreover, it is not entirely clear that an FTCA action
is available to Plaintiff.  The FTCA exempts from its limited
waiver of sovereign immunity "[a]ny claim arising out of assault
[or] battery[.]"  28 U.S.C. § 2680(h).  While that exemption
does not extend to "law enforcement officers of the United
States Government," some Courts have interpreted the term "law
enforcement officers" to exclude TSA officials like Defendant.
*See Pellegrino v. U.S. Transp. Sec. Admin.*, No. CIV.A. 09-5505,
2014 WL 1489939, at *6-7 (E.D. Pa. Apr. 16, 2014), *amended on
reconsideration*, No. CIV.A. 09-5505, 2014 WL 3952936 (E.D. Pa.
Aug. 12, 2014) (listing cases).  The Court, however, need not
reach the question in light of the Supreme Court's clear
instruction that the FTCA is largely irrelevant to the issue now
before the Court.

Defendant next argues that "if Plaintiff wished to
challenge TSA's pat-down screening procedures as applied to him
by Officer Polson as a violation of the Fourth Amendment, he

could have filed a petition for review of those procedures in an appropriate court of appeals pursuant to 49 U.S.C. § 46110." Mem. in Supp. of Mot. [Dkt. 27] at 11.  Plaintiff does not, however, seek "review" of TSA procedures or any "order issued by" an aviation authority.  49 U.S.C. § 46110(a).  It would afford Plaintiff no relief for the Court to "affirm, amend, modify, or set aside" any such order.  *Id*. § 46110(c).  Rather, Plaintiff challenges a discrete instance of abuse not authorized by the TSA – to wit, Defendant's alleged use of excessive force in intentionally and gratuitously striking Plaintiff's groin. Plaintiff seeks compensation for a past wrong, not prospective relief from considered agency action.  The statute Defendant cites is simply inapplicable to the case at bar.

Finally, Defendant argues that Plaintiff may seek redress through the TSA's "Contact Center," which "passengers and others may use in order to register their complaints and concerns via phone, email, or internet submission form."  Mem. in Supp. of Mot. [Dkt. 27] at 11.  Judging by Defendant's description, this is, essentially, a consumer complaint hotline. It is not clear what, if any, relief a complainant may receive. It appears that the "Contact Center" affords individuals only the bare opportunity to make the TSA aware of a complaint.  *See id.*  At that point, the TSA will unilaterally direct the

complaint to the "correct TSA recipient . . . for additional consideration and, if deemed necessary, action." *Id.*

This meager opportunity is not the sort of alternative process that provides a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550; *see also Pellegrino*, 2014 WL 1489939, at *11 (rejecting the TSA's Contact Center as a sufficient alternative to a *Bivens* remedy); *cf. Wilkie*, 551 U.S. at 554 (finding "a[ ] [patchwork] assemblage of state and federal, administrative and judicial benches applying regulations, statutes, and common law rules" insufficient to preclude a *Bivens* remedy). And while Defendant cites *Swyers v. United States Patent & Trademark Office*, No. 1:16-CV-15, 2016 WL 7042943 (E.D. Va. May 27, 2016), for the proposition that agency procedures may provide an adequate alternative to a *Bivens* remedy, the procedures at issue in that case were self-evidently more fulsome than those afforded by the TSA's "Contact Center," and in fact involved court review. *See id*. at *11 (discussing procedures that permitted an aggrieved party to "petition the OED Director, followed by the PTO Director, and after a final decision is reached, a federal court").

In short, Defendant has not identified any meaningful alternative to a *Bivens* remedy available to Plaintiff. That being so, this is "a case like *Bivens* or *Davis* in which 'it is

12

damages or nothing.'"  *Abbasi*, 2017 WL 2621317, at *19 (quoting *Bivens*, 403 U.S. at 410 (Harlan, J., concurring in judgment)). Moreover, Defendant points to no compelling evidence "that congressional silence [here] might be more than 'inadvertent.'" *Id*. at *18 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)).[1]  The Court therefore proceeds to the second step of the *Bivens* analysis.

### 3. Factors Counselling Hesitation

A *Bivens* action will not lie where "special factors" suggest that the Court should hesitate to imply a *Bivens* remedy. *See Wilkie*, 551 U.S. at 550.  The "special factors" inquiry does not necessarily focus on whether a *Bivens* action is desirable in a given context.  Rather, the issue is one of institutional competence: "'who should decide' whether to provide for a damages remedy, Congress or the courts?"  *Abbasi*, 2017 WL 2621317, at *12 (quoting *Bush*, 462 U.S. at 380).  The Supreme Court has made clear that "[t]he answer most often will be Congress."  *Id.*

---

[1]      While Defendant notes that Congress has legislated on the subject of redress for travelers wrongly prevented from boarding aircraft, *see* Mem. in Supp. of Mot. [Dkt. 27] at 17, the Court is unconvinced that this legislation has any bearing on the present situation.  The process Defendant describes is a means of appealing a federal agency's considered decision – a topic having little to do with redress for an individual TSA officer's unauthorized use of excessive force.  The Court will not presume that Congress has been conspicuously silent on the topic under consideration due to unrelated legislation.

Defendant argues that special factors are presented here because this case implicates national security.  While the Court agrees that appreciable national security concerns would, if raised, preclude a *Bivens* remedy here, Defendant does not adequately explain how this case presents such concerns.

As an initial matter, the Court notes that Defendant consistently and erroneously refers to this case as arising in the "national security context."  This conflates two distinct aspects of the *Bivens* analysis.  A "context," for purposes of implying a *Bivens* remedy, is a relatively narrow set of circumstances and legal issues.  *See Abbasi*, 2017 WL 2621317, at *15.  The relevant context here is a TSA officer's alleged use of excessive force during an airport security screening. "National security" is a high-level description of a special factor that might arise and counsel hesitation in this context, not a context unto itself.

Defendant's Motion does little to tie specific national security concerns to the context under consideration. Rather, it rests primarily upon generalizations about the *sui generis* nature of the airport setting.  Defendant is correct that Courts have consistently recognized airports as loci of special security concerns.  *See, e.g.*, *City of Indianapolis v. Edmond*, 531 U.S. 32, 47-48 (2000) (noting that "at places like airports . . . the need for . . . measures to ensure public

14

safety can be particularly acute); *United States v. Herzbrun*, 723 F.2d 773, 775 (11th Cir. 1984) ("[W]e have long held that [airport security checkpoints], like international borders, are 'critical zones' in which special [F]ourth [A]mendment considerations apply."). But that does not mean generic national security concerns bar any constitutional claim arising at an airport. *See, e.g., Tobey*, 706 F.3d at 393 ("We . . . are therefore unwilling to relinquish our First Amendment protections — even in an airport."). "[N]ational-security concerns must not become a talisman used to ward off inconvenient claims[.]" *Abbasi*, 2017 WL 2621317, at *18. The question is not whether airports present special security concerns – they do – but whether those concerns have any particular bearing on the context at issue in this case.[2]

The only specific concern Defendant identifies is the risk that implying a *Bivens* remedy here might chill legitimate

---

[2]         Similarly, Defendant makes much of the TSA's status as an integral part of the United States' "national security apparatus." Many – perhaps most – federal law enforcement bodies have some claim to that status. The Federal Bureau of Investigation, for example, is no less a vital part of the "national security apparatus" than the TSA. *See Abbasi*, 2017 WL 2621317, at *7. But that does not insulate FBI agents from valid *Bivens* claims generally. *See, e.g., Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001). To hold that a federal agency's status as a component of the "national security apparatus" precludes a *Bivens* action against its agents would eviscerate the *Bivens* remedy "in the search-and-seizure context," where its "continued force, or even . . . necessity" remains unquestioned. *Abbasi*, 2017 WL 2621317, *11.

TSA activity and discourage TSA officers from performing appropriately thorough security screenings. The risk of deterring legitimate law enforcement activity through personal liability, however, is not unique to this context. Indeed, it is a risk that inheres whenever courts imply a *Bivens* remedy. Federal officers have, for nearly fifty years, navigated such concerns while performing Fourth Amendment searches. Many of Defendant's observations about the nature of the TSA's work – for example, that TSA officers must make split second decisions in a fast moving environment to protect public safety – are no less applicable to the work of other federal agents who have successfully contended with *Bivens* liability. *Cf. Graham v. Connor*, 490 U.S. 386, 397 (U.S. 1989) ("[P]olice officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation"). Other of Defendant's observations seem unrelated to the issue of whether a *Bivens* remedy in this specific context would unduly chill TSA activity. It is not clear, for example, why it should matter here that "TSA screening officers may . . . require assistance from law enforcement officers in circumstances where a passenger is behaving in an intentionally disruptive manner." Mem. in Supp. of Mot. to Dismiss [Dkt. 27] at 16.[3]

---

[3]     Moreover, while Defendant notes that TSA officers

Defendant provides no reason to believe that TSA officers will be uniquely deterred from the adequate performance of their duties if faced with *Bivens* liability.  To the extent there are close cases, it is the purpose of qualified immunity to provide TSA officers with the breathing room they require to operate effectively.  *See Pellegrino*, 2014 WL 1489939, at *13. The Court, however, declines to simply assume that TSA officers would be too timid to perform adequate security screenings if subject to suit on the same basis as other federal officers.  To hold otherwise would essentially overrule *Bivens* completely given that, as noted above, the risk of chilling law enforcement arises whenever *Bivens* is invoked.

This concern seems particularly unwarranted given that – as also discussed above – many courts have hitherto presumed the availability of a *Bivens* remedy against TSA officers in connection with airport security screenings.  When other courts have expressly addressed the propriety of *Bivens* actions against TSA officers, they have permitted the action to proceed.  *See Vanderklok v. United States*, No. CV 15-00370, 2016 WL 4366976, at *7 (E.D. Pa. Aug. 16, 2016), *appeal docketed*, No. 16-3422

---

process a high volume of passengers and luggage every day, *see* Mem. in Supp. of Mot. to Dismiss [Dkt. 27] at 15, Defendant does not state how many enhanced pat-down screenings, such as the one at issue here, are performed daily.  Accordingly, while the number of such searches might have factored into the Court's decision, that number is not now before the Court.

(3rd Cir. Aug. 22, 2016); *Pellegrino*, 2014 WL 1489939, at *13.
Indeed, to the Court's knowledge, this would be the first court
to hold that a *Bivens* remedy is not available when a TSA officer
violates the Fourth Amendment during an airport security
screening.  For all that courts have allowed *Bivens* remedies
under similar circumstances, the catastrophic chilling effect
Defendant fears has yet to materialize.

Defendant does not cite, and the Court cannot see, any
other reason why national security concerns would counsel
hesitation to imply a *Bivens* remedy here.  Plaintiff alleges
that Defendant employed excessive force during a security
screening, deliberately and gratuitously striking Plaintiff in
the groin.  This is not conduct that the TSA has deemed
necessary, or even desirable, to protect national security.
Indeed, the TSA expressly forbids its officers to engage in such
behavior.  *See* 81 Fed. Reg. 11,364, 11,374 (Mar. 3, 2016)
("inappropriate touching of a passenger by an employee is
strictly prohibited").

This matter therefore little resembles other cases in
which courts have declined to imply a *Bivens* remedy due to
national security concerns.  Generally, those cases have
involved lawsuits against officials alleged to have acted *in
accordance with* national security policy.  Thus, for example, in
*Lebron v. Rumsfeld*, 670 F.3d 540 (4th Cir. 2012), the Fourth

18

Circuit declined to imply a *Bivens* remedy where it would have invaded the executive sphere, requiring that the "judiciary review and disapprove sensitive military decisions made after extensive deliberations within the executive branch as to what the law permitted, what national security required, and how best to reconcile competing values[.]" *Id.* at 551.  Similarly, in *Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009), the Second Circuit declined to imply "a damages remedy against senior officials who implement an extraordinary rendition policy" because doing so "would enmesh the courts ineluctably in an assessment of the validity and rationale of that policy and its implementation in [a] particular case." *Id.* at 575.  And in *Doe v. Rumsfeld*, 683 F.3d 390 (D.C. Cir. 2012), the D.C. Circuit declined to imply a *Bivens* remedy in a context that "would require a court to delve into the military's policies regarding the designation of detainees as 'security internees' or 'enemy combatants,' as well as policies governing interrogation techniques." *Id.* at 396.

This case is self-evidently more straightforward. There is no comparable risk of entangling the judiciary in sensitive matters of national security through second-guessing executive policy.  Indeed, if anything, this action *harmonizes* with the TSA's avowed policy.

Moreover, while this case arises in a new context – an airport security screening conducted by a Transportation Security Officer – the Fourth Amendment claim at issue falls squarely within the heartland of *Bivens*.  It presents a relatively simple, discrete question of whether a federal officer applied excessive force during a Fourth Amendment search.  *See Pellegrino*, 2014 WL 1489939, at *13 (rejecting the argument that the Court should decline to imply a *Bivens* remedy against TSA officers in part because "the present circumstances encompass exactly the type of facts and issues [that fit] comfortably within the judiciary's purview").  Such "individual instances of . . . law enforcement overreach . . . due to their very nature are difficult to address except by way of [*Bivens*] damages actions after the fact."  *Abbasi*, 2017 WL 2621317, at *19.  And while the Supreme Court has recently reaffirmed that the standard for implying a *Bivens* remedy is quite stringent, the Court simultaneously emphasized the "continued force, or even the necessity" of "*Bivens* in the search-and-seizure context in which it arose."  *Id.* at *11.

This is, in all relevant respects, precisely the kind of Fourth Amendment search-and-seizure case Courts have long adjudicated through *Bivens* actions.  Defendant has identified no meaningful difference, no reason for the Court to doubt its competence to carry the venerable Fourth Amendment *Bivens* remedy

20

into this context, and no reason to believe that Congress would disapprove of the Court's decision to do so.

Courts must approach novel *Bivens* claims with skepticism. That does not mean, however, that vague generalizations about the importance of national security are sufficient to defeat *Bivens* liability. To hold otherwise here would be to disregard the Supreme Court's injunction that "national-security concerns must not become a talisman used to ward off inconvenient claims[.]" *Abbasi*, 2017 WL 2621317, at *18. It would likewise run contrary to the Fourth Circuit's admonition that the airport setting is not, in and of itself, sufficient to defeat a constitutional claim. *See Tobey*, 706 F.3d at 393. As Plaintiff would otherwise be without recourse, and Defendant has not identified any specific special factor that gives the Court pause, the Court will permit Plaintiff's *Bivens* claim to proceed.

### B. Qualified Immunity

Defendant next contends that he is entitled to qualified immunity. In evaluating whether Defendant is entitled to qualified immunity, the Court must determine "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015).

In making this determination on a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court generally confines its analysis to the allegations of fact set forth in the plaintiff's complaint.  Here, however, Defendant claims that the Court can consider an additional piece of extrinsic evidence: a video taken by a security camera of the events giving rise to this suit.  The video, to put it mildly, depicts an incident substantially less dramatic than Plaintiff's Amended Complaint would suggest.

As the Court finds that Plaintiff interposes no valid objection, the Court will grant Defendant's Motion for Leave to File the DVD containing the video with the Clerk of the Court. Nonetheless, the Court finds that it may not properly consider the footage submitted by Defendant in deciding the instant Motion.

There exist a few limited exceptions to the general rule that a court may consider only the allegations of a plaintiff's complaint in evaluating a motion brought under Federal Rule of Civil Procedure 12(b)(6).  The Court may, for example, consider exhibits attached to the Complaint and other documents expressly incorporated by reference.  *See, e.g.*, *Goldfarb*, 791 F.3d at 508.  But while Plaintiff's Amended Complaint repeatedly refers to security footage and includes two still images that appear to have been taken from the video in

question, Plaintiff's Amended Complaint neither attaches nor explicitly incorporates the video submitted by Defendant.

Defendant contends that the Court may nonetheless consider the footage because it is integral to Plaintiff's Amended Complaint.  There are, however, three problems with this argument.  First, it is not clear that the footage in question is integral to Plaintiff's Amended Complaint in any relevant sense.  A document is "integral" to a complaint, and therefore fair game on a Rule 12(b)(6) motion, when the plaintiff's claims "turn on, [ ]or are . . . otherwise based on" the document in question.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).  Plaintiff's claims here in no way depend upon the footage Defendant has submitted.  And while Plaintiff's Amended Complaint makes clear that he intends to submit security footage for evidentiary support, "[l]imited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

Second, Plaintiff has suggested that he disputes the provenance of the security footage in question.  While the Court finds itself skeptical of Plaintiff's claims, generally it is only appropriate to consider documents extrinsic to a complaint on a 12(b)(6) motion where there is "no dispute about the

document's authenticity." *Goines*, 822 F.3d at 166.  The Court
is unable to resolve this sort of evidentiary issue on the
present Motion.[4]

Third, Plaintiff contends that additional footage will
be produced in discovery that will vindicate his account of
events.  *See* Opp. [Dkt. 33] at 3.  It is therefore not clear
that Plaintiff's various references to security footage in his
Amended Complaint refer specifically to the video submitted by
Defendant, as opposed to security footage generally.  Under such
circumstances, it is not entirely clear that the specific
document Defendant has submitted is cited in, much less integral
to, Plaintiff's Amended Complaint.

Turning to the question of whether Defendant is
entitled to qualified immunity based solely on the allegations
of Plaintiff's Amended Complaint, the Court finds that he is
not.  As discussed above, the allegations of Plaintiff's Amended
Complaint are simple.  Plaintiff claims that Defendant required
him to submit to a pat-down search while passing through airport
security.  Defendant then asked Plaintiff to spread his legs.

---

[4]        The Court notes that while Defendant has submitted
affidavits attesting to the video's authenticity, the Court is
not able consider these extrinsic documents in deciding the
present motion.  *See, e.g.*, *Davison v. Loudoun Cty. Bd. of
Supervisors*, No. 1:16CV932 (JCC/IDD), 2016 WL 4801617, at *3-4
(E.D. Va. Sept. 14, 2016).

After Plaintiff had done so, Defendant gratuitously and
intentionally struck Plaintiff in the groin.

At no point does Defendant address these relatively
straightforward allegations.  Defendant first argues that the
TSA's pat-down search procedures are constitutional.  *See* Mem.
in Supp. of Mot. [Dkt. 27] at 21-23.  But as discussed above,
Plaintiff does not challenge the constitutionality of the TSA's
pat-down search procedures.  Defendant next argues that
Plaintiff has failed to state a claim in light of the video
footage submitted by Defendant.  *See id.* at 23-26.  As also
discussed above, however, the Court finds that it cannot
properly consider this footage in evaluating Defendant's Motion.

Defendant argues further that Plaintiff fails to set
forth any well-pled allegations of fact demonstrating that
Defendant violated the Fourth Amendment.  *See id.* at 26-27.  But
here again, Defendant does not address the clear narrative
included in Plaintiff's Amended Complaint.  Rather, Defendant
primarily takes issue with the 14-page preamble to that
narrative – which, the Court agrees, consists largely of
irrelevant invectives.  Finally, Defendant argues that "even if
this Court could construe Plaintiff's allegations to include a
claim that Officer Polson utilized excessive force (outside of
the alleged hand 'ramming') during the patdown, the
intrusiveness during the standard pat-down screening procedure

25

was minimal, and the manner was routine." *Id.* at 27.  It is not clear, however, why the Court would look beyond the "hand 'ramming'" to find a Fourth Amendment violation, as that is clearly the basis of Plaintiff's Fourth Amendment claim.

Defendant's Reply Brief is little better.  In it, Defendant appears to ask the Court to disregard the allegations of Plaintiff's Amended Complaint and find "that contact with Plaintiff's genitals, if any at all, was incidental and occurred through the course of a typical security pat-down." Rep. [Dkt. 42] at 8.  The Court, however, is not free to simply disbelieve the clear factual allegations of Plaintiff's Amended Complaint on a 12(b)(6) Motion.  Plaintiff claims that Defendant intentionally, gratuitously struck him in the groin on a specific date in a specific location.  Whether or not that is so can be resolved only on summary judgment or at trial.

Defendant's oratorical calisthenics appear calculated to avoid simple questions with obvious answers: First, does the Fourth Amendment permit a federal officer to gratuitously strike an individual during a search?  No.  Second, was that clearly established in the law at the time?  Yes.

When evaluating an excessive force claim, Courts engage in "'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Smith v.*

*Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989)).  In conducting this analysis, three considerations are particularly salient: the severity of the crime allegedly committed, the threat posed to the officer and others, and any resistance offered.  *Armstrong*, 810 F.3d at 899.  Courts have found that an airport security screening search like the one at issue in this case is "constitutionally reasonable provided that it 'is no more extensive nor intensive than necessary, in the light of current technology, to detect the presence of weapons or explosives [ ][and] that it is confined in good faith to that purpose.'" *United States v. Aukai*, 497 F.3d 955, 962 (9th Cir. 2007) (quoting *United States v. Davis*, 482 F.2d 893, 913 (9th Cir. 1973) (alterations in original).

Taking the allegations of Plaintiff's Complaint as true, Plaintiff was not suspected of committing any crime, posed no threat to Defendant or others, and fully complied with Defendant's instructions during the pat-down search.  The search in question went well beyond what was necessary to detect contraband, and was not confined to that purpose.  There was, in short, no legitimate government interest served by Defendant's alleged use of force to be weighed against Plaintiff's substantial interest in being free from an unreasonable seizure.

Such an action is "objectively unreasonable," *Graham*, 490 U.S. at 397, by any measure, and violates the Fourth Amendment.

Defendant nonetheless argues that "[e]ven if the Court were to conclude that Plaintiff had sufficiently alleged a violation of the Fourth Amendment, [Defendant] would still be entitled to qualified immunity because there was no law clearly establishing the specific degree of permissible intrusiveness of a security screening pat-down[.]"  Rep. [Dkt. 42] at 11.  The Fourth Circuit, however, "repeatedly ha[s] held that it is not required that a right violated already have been recognized by a court in a specific context before such right may be held 'clearly established' for purposes of qualified immunity." *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 734 (4th Cir. 2013).  "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  Whether or not the law has established "the specific degree of permissible intrusiveness of a security screening pat-down," it has clearly established the limits of force that may be used during a Fourth Amendment seizure.  It is, and has long been, crystal clear that "officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity."  *Bailey v. Kennedy*, 349 F.3d 731, 744-45

28

(4th Cir. 2003) (quoting *Jones v. Buchanan*, 325 F.3d 520, 531-32 (4th Cir.2003)).  That is precisely what is alleged to have occurred here, and it makes little difference that it occurred in the course of an airport security screening.  Frankly, it strains credulity for Defendant to claim that a reasonable federal officer would be surprised to learn that gratuitously striking an individual in the groin while searching them violates the Fourth Amendment.

In sum, Defendant is not entitled to qualified immunity based on the allegations of Plaintiff's Amended Complaint.  The issue, of course, may - and perhaps should - be raised again on a motion for summary judgment, at which point the Court will be able to take into account a wider range of evidence.

### IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss Plaintiff's Amended Complaint. Additionally, the Court will grant Defendants' Motion for Leave to File DVD with Clerk of Court.

An appropriate Order will issue.

<table>
<tr><td></td><td>/s/</td></tr>
</table>

July 11, 2017                        James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE